411 So.2d 1063 (1982)
William C. MOCK
v.
Lashawanda Marie MOCK, Minor Child of Anna Washington Mock.
No. 81-C-2146.
Supreme Court of Louisiana.
March 1, 1982.
Rehearing Denied April 5, 1982.
Dissenting Opinion April 14, 1982.
Neil S. Hyman, of Steiner & Hyman, New Orleans, for defendant-applicant.
Bradford H. Walker, New Orleans, for plaintiff-respondent.
CALOGERO, Justice.
In this action for disavowal of paternity we consider, for the first time, the effect of the 1976 amendments to the paternity articles upon the husband's burden of proof in overcoming the presumption of paternity, and the permissible evidence which may be *1064 used to meet that burden. La.C.C. arts. 184-190.
William C. Mock, plaintiff, was married to Anna Mock on October 25, 1969. The couple lived together as man and wife until sometime in 1974. At that time the couple ceased living together and have not lived together since. There has been no legal separation from bed and board or divorce. The couple is still legally married.
On May 12, 1978, Anna Mock gave birth to a female child, Lashawanda Marie Mock. On July 7, 1978, William Mock filed a petition to disavow paternity, contending that he is not the biological father of the child. A curator ad hoc was appointed to represent the interest of Lashawanda Marie Mock.
At trial on the merits, at which the only evidence introduced was the contradictory testimony of William Mock and Anna Mock and their respective witnesses, the trial judge rendered judgment in favor of William Mock, finding that he was not the child's father. The Court of Appeal, 400 So.2d 248, affirmed the trial court judgment.
We granted writs to determine whether the Legislature, in amending La.C.C. art. 187 so as to allow a husband to disavow paternity "if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father", intended to allow the husband to succeed in his disavowal action with virtually no evidence other than his own testimony that he did not have sexual intercourse with the mother of the child at the probable time of conception.
Arriving at a determination as to what the Legislature intended the husband's burden of proof to be in overcoming the paternity presumption under the 1976 amendments to the paternity articles is no easy task. The Courts of Appeal which have addressed this question have expressed opposite views, and not without plausible reasons in support of their respective positions. Migues v. Migues, 398 So.2d 1279 (La.App. 4th Cir. 1981); Ogea v. Ogea, 378 So.2d 984 La.App. 3rd Cir. 1979, writs denied, 379 So.2d 1104 (La.1980).
La.C.C. art. 187 considered alone, although somewhat ambiguous, might well be interpreted as permitting proof of non-paternity by a simple preponderance of the evidence. However, considering the state of the law prior to the amendments, the Legislative history surrounding the amendments, and the Official Revision Comments to La.C.C. art. 187 as amended, as well as the public policy against bastardizing the innocent child, we conclude that the Legislature intended the article as amended to be restrictive insofar as what types of evidence might be used to rebut successfully the presumption of paternity.
La.C.C. art. 184 as amended by Act No. 430 of 1976, establishing a presumption of paternity, provides:
The husband of the mother is presumed to be the father of all children born or conceived during the marriage.
It is not disputed that Lashawanda Mock was both conceived and born during the legal marriage of William and Anna Mock. The question is whether the character of the evidence admitted in this case was of the type contemplated by La.C.C. art. 187 to overcome the presumption of paternity, and if so, whether it was sufficient to overcome that presumption.
Prior to the amendment of this article in 1976, La.C.C. art. 184 had provided:
The law considers the husband of the mother as the father of all children conceived during the marriage.
The presumption created by this provision has been referred to as "the strongest presumption known in law." Feazel v. Feazel, 222 La. 113, 62 So.2d 119 (1952). It was referred to as such because only in very rare instances could one even attempt to rebut it.[1] It was found that this strict *1065 application of the presumption, although promoting the public policy against bastardizing children, often did not conform with the realities of the situation, that is, one who could not possibly be the biological father of the child, or one who was clearly not, was nonetheless often conclusively presumed to be so.[2]
Accordingly, upon recommendation of the Louisiana Law Institute, which prepared and submitted the proposed amendments, the Legislature, by Act 430 of 1976, amended the Civil Code articles on paternity in an attempt to moderate the statutory and jurisprudential rules which had prevailed.
La.C.C. art. 187, establishing the burden of proof in a disavowal action, provides:
The husband can disavow paternity of a child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father.
Plaintiff argues that under La.C.C. art. 187, his testimony that he did not have sexual intercourse with his wife at the probable time of conception, if more believable than the contrary testimony of his wife, is sufficient to prove "by a preponderance of the evidence" that he is not the father of the child. He contends that testimonial evidence of this nature was included among the types of evidence contemplated by the legislature in their enacting the provision; and he contends that his evidence, accepted by the trial judge as true, is sufficient to support a judgment of non-paternity.
The attorney for the child, on the other hand, argues that this testimonial evidence of non-intercourse, which was contradicted by the testimony of the mother of the child, was not evidence of the type of facts intended by the Legislature to sustain the disavowal action in its reference to "any facts which reasonably indicate that [one] is not the father." In support of this argument, defendant relies on the Official Revision Comments to article 187, which provide:
Article 187 was amended to provide that evidence used in an action for disavowal of paternity may consist of any facts which reasonably indicate that the husband is not the father of the child. Examples of the type of facts which may create a preponderance of evidence in an action to disavow may include (but are not limited to) such items as blood grouping test results or any other reliable scientific test results that preclude paternity of the husband, proof of sterility of the husband at the probable time of conception, and remoteness of the husband from the wife that makes the cohabitation unlikely at the probable time of conception.
While it is true that the Official Revision Comments are not part of the law itself (See Section 4 of Act No. 430 of 1976), we nonetheless find them helpful in our effort to discern the intent of the Legislature in enacting the statute. It is clear from the comments that the Legislature intended to allow disavowal of a child by proof of any *1066 of the specified means, or examples there noted: blood grouping tests; other scientific tests; proof of sterility at the time of conception; and proof of remoteness such that cohabitation was unlikely. The list is expressly not exclusive, and it is clear that the Legislature also intended to allow other types of facts, similar to the express examples, to support a disavowal action.
However, the article's reference is to the proof of non-paternity by reasonably indicative facts, by a preponderance of the evidence. The burden is thus couched differently than a simple preponderance of the evidence. Upon reviewing the Legislative history of the article we find that this qualification, that the proof be of facts, was an intentional addition to the statute. The statute was originally introduced as House Bill No. 418 and read as follows:
The husband can disavow paternity of a child if he proves by a preponderance of the evidence that he is not the father.
The bill did not pass as thus prepared. Rather it was enacted into law only after being amended to read as follows:
The husband can disavow paternity of a child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father. (emphasis provided.)
This indicates that the Legislature was not satisfied with a mere requirement that the husband could disavow a child by a preponderance of any type of evidence, like the burden in most other civil cases. Rather, the Legislature intended a different type of burden, that the husband could only rebut the paternity presumption by proof by a preponderance of the evidence of facts which indicate that he is not the father of the child.
When this intentionally added qualification, requiring the proof to be by facts, is read with the examples of facts which were expressly contemplated, as set out in the comments, we conclude that the type of facts that the Legislature intended to be sufficient to rebut the paternity presumption are facts susceptible of independent verification, or of corroboration by physical data or evidence, such as scientific tests and the verifiable physical circumstance of remoteness.[3] In the absence of proof of these types of facts, the presumption of paternity will not be overcome. Testimony by the husband that he did not have sexual intercourse with his wife, notwithstanding that he had ample opportunity, would generally be of probative value, but it is not proof of the kind of facts the article contemplates.
While this might seem to be a rather heavy burden on the husband, in fact the article as amended significantly liberalizes that burden, when we consider what had previously been the applicable law and jurisprudence. (See footnote 2.) It accomplishes the Legislative objective of allowing the husband to disavow a child born to his wife where it is clear that he is not the father, while retaining the public policy against bastardizing the innocent child. The wisdom of the Legislature's broadening the permissible proof in paternity disavowal cases, although restricted to evidence of scientific facts and physical circumstances, while retaining the presumption of paternity and a heavier than usual burden of proof, is made evident by the advances in scientific testing in this field of the proof and/or disproof of paternity.[4]
The only evidence introduced in this case concerning whether plaintiff was the *1067 father of the child was the testimony of plaintiff that he had not had sexual relations with his wife since their separation and the testimony of plaintiff's brother that plaintiff had not, to the best of the brother's knowledge, slept with his wife. This was contradicted by the testimony of Anna Mock who stated that she and her husband had had sexual relations on two occasions since their separation, one of those being on her birthday, around the possible time of conception. That testimony was corroborated by the testimony of her sister, who lived at the same house. The sister stated that William Mock was still at the house the morning after Anna's birthday. The only other testimony had to do with Anna's being seen twice in a lounge with another man, one Joe Sturgis, and with Sturgis' giving William's brother a cigar about a year after the baby had been born, an event which, as related by plaintiff's brother, was admittedly not accompanied by any words associating the cigar gift with the birth of a child.
Plaintiff's evidence simply did not include the type of facts contemplated by La.C.C. art. 187. There were no scientific test results admitted nor was there any showing of remoteness between William and Anna such that cohabitation was unlikely. To the contrary, the parties lived in the same city, they frequented the same lounges and William himself even admitted that he had visited the house where Anna lived. The presumption of paternity is rebuttable, but not with the character of proof presented here. It is the nature of the proof as well as its sufficiency which falls short of rebutting the legal presumption of paternity in this case.

Decree
For the foregoing reasons, the lower courts judgments allowing the disavowal are reversed.
REVERSED.
DIXON, C.J., concurs.
MARCUS, J., dissents and assigns reasons.
LEMMON, J., dissents and will assign reasons.
MARCUS, Justice (dissenting).
Mr. and Mrs. Mock were separated in 1974. Four years later, Mrs. Mock gave birth to the child in question. Within sixty days, Mr. Mock filed a suit to disavow paternity. After trial on the merits, the trial judge rendered judgment in favor of Mr. Mock finding that he was not the child's father. I am unable to say that the trial judge was clearly wrong in concluding that Mr. Mock proved by a preponderance of the evidence facts which reasonably indicate that he was not the father of the child. After all, in most cases, as in this case, it boils down to a question of credibility to be decided by the trier of fact. Accordingly, I respectfully dissent.
LEMMON, Justice, dissenting.
Act 430 of 1976 overruled a series of cases which, contrary to good sense and experience, virtually made conclusive the presumption that the husband of the mother is the father of the child and imposed an almost impossible burden of proof on the presumed father. The clear intent of Act 430 was to eliminate the conclusiveness of the presumption and to provide a more realistic standard under which a plaintiff in a disavowal action might prove that he is not the father of the child in question.
As amended and reenacted, C.C. Art. 187 establishes the husband's burden of proof, namely "by a preponderance of the evidence any facts which reasonably indicate that he is not the father". The Official Revision Comment lists some examples of the "type of facts which may create a preponderance of evidence", but specifically states that the type of facts "may include (but are not limited to)" those listed as examples.[1]
*1068 The fact that the presumed father did not have intercourse with the child's mother during the probable period of conception is certainly relevant to the issues in a disavowal case. The question here concerns the type of evidence which may be used to prove this fact. The majority view as to the appropriate type of evidence equates Article 187 to a dead man's statute by requiring something more than the testimony of the claimant for a preponderance of the evidence. This decision in effect holds that the father is not a competent witness to testify on the fact of intercourse. The Legislature made no such pronouncement, and the Articles amended in 1976 contain no suggestion of a change in the normal rules of admissibility or of preponderance of evidence.
I would hold that evidence presented by a presumed father may consist of "any facts" relevant to the determination of paternity, including facts proved only by testimony of the witnesses as judged by the trier of fact. While it might have been preferable to eliminate swearing matches in disavowal cases, since the testimony of the presumed father and the child's mother will generally be conflicting and self-serving, the Legislature did not expressly do so, and I would decline to infer such a legislative intent.
In the present case plaintiff's disputed testimony, as corroborated by his witnesses, tended to prove he was not the father of the child, and the trial court expressly credited this evidence. Furthermore, the wife admitted that she and her husband had lived apart for five years without ever seeing each other except for two isolated occasions. This admitted circumstance itself casts doubt on the mother's claim that they had intercourse on both occasions. Additionally, the wife admitted that she did not attempt to contact her husband or his family when she learned that she was pregnant or when the child was born. When the husband did learn of the pregnancy and birth, he immediately disclaimed responsibility and took legal action.
Under the overall circumstances, the trial court did not err in resolving the conflicting testimony in plaintiff's favor and in finding he had met his burden of proof.[2]
The judgment of the lower courts should be affirmed.
NOTES
[1] There were only six statutorily provided instances where the husband of the mother could attempt to rebut the presumption of paternity: (1) for causes of adultery where the birth had been concealed from the husband (La.C.C. art. 185); (2) where the child capable of living is born before the 180th day after the marriage (La.C.C. art. 186) unless the husband knew of the pregnancy before the marriage or was present and signed the registering of the birth (La.C.C. art. 190); (3) where the child was born 300 days after the dissolution of the marriage (La.C.C. art. 187); (4) where the child was born 300 days after a judgment of separation from bed and board unless cohabitation is shown (La.C.C. arts. 187 & 188); (5) where cohabitation has been physically impossible because of "remoteness" of the husband (La.C.C. art. 189); or (6) under the Uniform Act on Blood Tests to Determine Paternity (La.R.S. 9:396-398 Act No. 521 of 1972).
[2] Even though the evidence indicated that the husband could not possibly have been the father of the child or was surely not, he nevertheless could not succeed in a disavowal action in the following situations: proof of natural importence was not admissible in a disavowal action (La.C.C. art. 185); disavowal for sterility due to a childhood disease was not allowed, Tannehill v. Tannehill, 261 So.2d 619 (La.1972); the testimony of both the husband and the mother that the couple had not had sexual relations with each other was not sufficient to support the disavowal action, Feazel v. Feazel, 62 So.2d 119 (La.1952); the fact that the mother was living with the child's acknowledged father at the time of the child's conception and birth and the couple later married, was not sufficient proof for the legal husband to succeed in disavowing the child, George v. Bertrand, 217 So.2d 47 (La.App. 3rd Cir. 1968), writs denied, 219 So.2d 177 (La.1968), writs denied, 396 U.S. 974, 90 S.Ct. 439, 24 L.Ed.2d 443 (1969).
[3] Had the Legislature intended that the presumption of paternity could be rebutted by the mere testimony of the husband or wife, they could certainly have made that intent clear as did the Wisconsin Legislature in enacting Wis. Stat.Ann. 891.39(1)(a) which provides:

In all such actions or proceedings (in which the husband of the mother brings an action to disavow a child born during wedlock) the husband and the wife are competent to testify as witnesses to the fact.
[4] While the blood grouping tests generally are not conclusive in proving or disproving paternity, there is a new test which has recently been developed, the HLA test (Human Leucocyte Antigen test), which often reaches a 98% to 99% accuracy level in determining whether a man is or not the father of a certain child, and is beginning to be recognized in paternity cases in other jurisdictions. See Disputed Paternity Proceedings, Sidney B. Schatkin, Fourth Edition, Supp.1981, Vol. 1, §§ 8.01-8.19.
[1] It is evident that the examples are merely illustrative, since at least two of the three listed examples were, prior to the 1976 amendment, already statutorily acceptable methods of proving non-paternity. R.S. 9:396 et seq., effective in 1972, provided that the presumption of the legitimacy of a child is overcome when the results of blood grouping tests indicate that the husband is not the father of the child. (Acts 1972, No. 521, § 5). Similarly, former Article 189 provided that the presumption of paternity is at an end when the remoteness of the husband from the wife has been such that cohabitation has been physically impossible. And while sterility of the husband was not a statutory basis for disavowal before the amendments, the inclusion of sterility as an example of the type of fact which would support the father's burden of proof seems to be a direct result of the decision in Tannehill, supra, and is indicative of the intent to overrule that case and others like it.
[2] Under the authority of R.S. 9:396 et seq., the trial court could have ordered, or any of the parties could have requested, that blood tests be taken. The failure to introduce such evidence, although an appropriate factor to be considered, does not automatically defeat plaintiff's action for disavowal.