463 So.2d 737 (1985)
Jeanne Nelson SCHWAB, For and on Behalf of the Minor, Brian Paul SCHWAB
v.
Paul Joseph GALUSZKA.
No. CA-2084.
Court of Appeal of Louisiana, Fourth Circuit.
January 11, 1985.
Writ Denied March 15, 1985.
*738 Robert C. Lowe, Terence L. Hauver, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, New Orleans, for appellant.
John R. Martzell, New Orleans, for appellee.
Before GARRISON, BARRY and LOBRANO, JJ.
LOBRANO, Judge.
This paternity action is brought by Jeanne Nelson Schwab on behalf of her minor son, Brian Paul Schwab (appellee) seeking to have Paul J. Galuszka, (appellant) declared the natural father of the child. From a judgment of the lower court declaring him to be the father appellant perfects this appeal alleging errors as to law and fact.
The issues presented for our review can be consolidated into two categories for discussion. First, appellant argues that the burden of proof should be greater than a mere preponderance of the evidence, but should be "clear and convincing". Or, as he further argues, it should be a preponderance of the facts. Second, he argues that the record does not support the findings of fact set forth by the commissioner, and that appellee failed in her burden of proof.

BURDEN OF PROOF
The pertinent dates to be considered in connection with the first issue are as follows. The date of conception is sometime between June 4th and June 12th, 1980. The date of birth is March 8, 1981. The trial dates are May 9 and 10, 1983.
At the time of conception Civil Code Articles 208 thru 212 provided as follows:
"Art. 208. Illegitimate children, who have not been legally acknowledged, may be allowed to prove their paternal descent."
"Art. 209. In the case where the proof of paternal descent is authorized by the preceding Article, the proof may be made in either of the following ways:
1. By all kinds of private writings, in which the father may have acknowledged the bastard as his child, or may have called him so;
2. When the father, either in public or in private, has acknowledged him as his child, or has called him so in conversation or has caused him to be educated as such;
3. When the mother of the child was known as living in a state of concubinage with the father, and resided as such in his house at the time when the child was conceived."
"Art. 210. The oath of the mother, supported by proof of the cohabitation of the reputed father with her, out of his house, is not sufficient to establish natural paternal descent, if the mother be known as a woman of dissolute manners, or as having had an unlawful connection with one or more men (other than the man whom she declares to be the father of the child) either before or since the birth of the child."
"Art. 211. In the case of rape, whenever the time of such rape shall agree with the time of conception, the ravisher may, at the suit of the parties concerned, be declared to be the father of the child."
"Art. 212. Illegitimate children of every description may make proof of their maternal descent, provided the mother be not a married woman.
But the child who will make such proof shall be bound to show that he is identically the same person as the child whom the mother brought forth."
Subsequent to conception, but prior to birth, Articles 208 and 209 were amended to provide:
"Art. 208. Authorization to prove filiation. Illegitimate children, who have not been acknowledged as provided in Article 203, may be allowed to prove their filiation."

*739 "Art. 209. Methods of proving filiation.
* * * * * *
... 4. A child of a man may prove filiation by any means which establish, by a preponderance of the evidence, including acknowledgement in a testament, that he is the child of that man. Evidence that the mother and alleged father were known as living in a state of concubinage and resided as such at the time the child was conceived creates a rebuttable presumption of affiliation between the child and the alleged father."
Subsequent to birth, but prior to trial they were again amended to provide:
"Art. 208. Requirement to prove filiation. In order to establish filiation, a child who does not enjoy legitimate filiation or who has not been filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must institute a proceeding under Article 209."
"Art. 209. Proof of filiation.
A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgement under Article 203 must prove filiation by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article."
* * * * * *
At the time of trial, Article 209 had again been amended to provide:
"Art. 209. Proof of filiation.
A. A child not entitled to legitimate filiation or filiated by the initiative of the parent by legitimation or by acknowledgement under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or in his behalf within the time limit provided in this article."
Appellant first argues that the applicable codal provisions should be those in effect at the time of conception. In applying these he argues that appellee failed to prove any of the three provisions set forth in Article 209. In addition, he argues that the legislative history of the pertinent civil code articles indicates an intent to establish a burden of proof greater than a mere preponderance of the evidence. In this regard he analogizes the paternity action with the disavowal action set forth in Civil Code Article 187 as construed in Mock v. Mock, 411 So.2d 1063 (La.1982).
Civil Code Article 187 provides:
"The husband can disavow paternity if he proves by a preponderance of the evidence any facts which reasonably indicate he is not the father."
In interperting this article the Supreme Court, in Mock v. Mock, supra, stated:
"However, the article's reference is to the proof of non-paternity by reasonably indicative facts, by a preponderance of the evidence. The burden is thus couched differently than a simple preponderance of the evidence."
* * * * * *
"... The legislature intended a different type of burden, that the husband could only rebut the paternity presumption by proof by a preponderance of the evidence of facts which indicate that he is not the father of the child." id. at 1066.

Appellant argues that since the burden is greater in a disavowal action it should also be the same in a paternity action.
We disagree with appellant on both of these arguments. We find that the applicable law governing the burden of proof is as set forth in the applicable articles as of the date of trial. Civil Code Article 209, as amended, did not create a new substantive right as there always existed a right to prove paternity. The amendments merely expanded the evidentiary methods by which paternity could be proved. Even if, assuming arguendo, the date of conception rather than the date of trial were to be used as the pivotal date we are of the opinion the provisions of Article 209 as amended, would still be applicable. State v. Essex, 427 So.2d 71 (La.App. 4th Cir.1983), writ denied, made it clear that, at least in this circuit, the amendments to *740 Civil Code Article 209 are procedural and are therefore to be applied retroactively. Although admitting that a conflict exists with other circuits, the court in Essex, supra, stated "... it is clear to us that the articles relate to evidentiary matters that are procedural in nature and should therefore have retroactive effect." Id. at 74. We therefore hold that it was proper for the lower court to apply the provisions of Article 209, as amended, in disposing of this case.
We also reject appellant's argument concerning the burden of proof. Civil Code Article 209 is clear. It states "... by a preponderance of the evidence in a civil proceeding..." This is the standard we applied in State v. Essex, supra, and in O'Bannon v. Azar, 435 So.2d 1144 (La. App. 4th Cir.1983). Citing the earlier case of Succession of Washington, 308 So.2d 892 (La.App. 2nd Cir.1975), we stated in O'Bannon, supra, "[t]he burden of proof required by plaintiff is to establish paternity by a preponderance of the evidence." Id. at 1148. Thus, we are satisfied that the burden of proof both before and after the above cited amendments to the Civil Code is by a preponderance of the evidence.
Appellant's reliance on the analogy with the disavowal action of Article 187, and Mock v. Mock, supra, is misplaced. In so arguing he overlooks the provisions of Article 184, as amended by Act. No. 430 of 1976, which provides:
"The husband of the mother is presumed to be the father of all children born or conceived during the marriage."
In Mock v. Mock, supra, the Supreme Court stated, "[t]he presumption created by this provision has been referred to as `the strongest presumption known in law'" Id. at 1064. That Court's subsequent discussion of the burden of proof in disavowal suits was predicated on the existence of this presumption. The existence of that presumption cannot be ignored when attempting analogy with the paternity suit. Although appellant orally argues otherwise there is no presumption in a paternity suit. The scales of justice stand out evenly in a paternity action and the plaintiff bears the burden by a preponderance as in any other civil proceeding.
Having determined the applicable Civil Code Article and the burden of proof required we now turn to a review of the facts of this case.

FACTS:
Both parties testified that commencing in November of 1979 they met in various places and engaged in sexual activities for several months. They both are employed in the legal profession, appellee is a court reporter, appellant as an attorney.
Appellee testified that she went to appellant's apartment in early June of 1980, where sexual activities took place on two separate occasions, June 4th and June 12th. Early in July, when she missed a menstrual period, she consulted a physician, who advised her that she was pregnant. Upon learning of her pregnancy, she testified she met with appellant to discuss the situation. Several conversations ensued during which the appellant admitted paternity and advocated an abortion. Once appellee decided that she was not going to have an abortion, she testified appellant became hostile, denied paternity and told her that any further communications would have to be through his attorney.
Appellant admits that he was informed of appellee's pregnancy in July and that he engaged in several conversations with her advising her to obtain an abortion. He, however vehemently denies having admitted paternity, and states he merely consulted with her in an advisory capacity.
Appellee asserted her love for appellant and denied any sexual activities with any other man from November of 1979.
Appellant testified and admitted the earlier sexual activities, and one of the two last occasions. However the one he agrees took place, he states took place in late May, not June. Further, he testified that sexual activity occurred on that occasion, but he did not complete the sexual act because appellee was drunk. The dates are of critical importance since if appellant's version *741 is true then he could not have been the father of the child. If on the other hand, appellee's version is accepted that sexual intercourse occurred in early June, then appellee could have been Brian's father.
Appellant's certainty in regard to the date stems from his assertion that he had a rental car on hand at the time as his own car had been involved in an accident and that rental car was returned at the end of May. In further support he introduced an estimate of repairs dated May 30, 1980, which he said were performed and paid for on that date. He testified that he would have returned the rental car immediately thereafter, and therefore when the sexual encounter had taken place, it was in May.
Another disputed fact concerning the date issue was appellee's testimony that shortly following her recommendation of appellant as an attorney for parties involved in an accident case, the two June encounters were had. The pleadings of that referred to accident case show that the date of the accident was June 1, 1980. Appellee's testimony shows a complete familiarity with the facts of that case indicating that there were meetings between the parties about that time. Appellant denies intercourse with appellee during the week of June 4th and June 12th but does admit to sexual intercourse following her referral of a case.
On both of these factual issues concerning the dates the Commissioner found it more probable than not that appellee's version was the more accurate. He expressed doubt that the estimate to appellant's car, the repairs and payment were all made on the same date. His conclusions in this regard were predicated on the fact that the estimate was for extensive damages requiring 13 hours of labor, and that actual payment of the damages would be more conclusive. Appellant submitted no proof of payment.
Further, appellee's familiarity with the case referred to appellant, the accident date in that case, and that fact that appellant represented the parties therein led the commissioner to believe appellee's version in that regard.
In both instances we cannot say there was manifest error in the lower court's findings.
The scientific evidence presented consisted of blood grouping tests performed by Dr. Leslie Bryant, Jr., an acknowledged expert in the field. Those studies revealed that the appellant was not excluded from the possibility of being the child's father, but rather showed a probability of 91.7%. That is, according to Dr. Bryant, it is 91.7% more probable that the appellant is the child's biological father than the random man in the population.
Appellant argues that the blood tests are inadmissable and are to be discredited since they were partially performed and interperted by Dr. Bryant's technical staff. In essence, he urges a break in the "chain of custody".
La.R.S. 9:396 provides:
"Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of an person whose blood is invlived may, or upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to blood tests. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require."
La.R.S. 9:397 provides:
"The tests shall be made by experts qualified as examiners of blood types who shall be appointed by the court. The experts shall be called by the court as witnesses to testify to their findings and shall be subject to cross-examination by the parties. Any party or person at whose suggestion the tests have been ordered may demand that other experts, qualified as examiners of blood types, perform independent tests under order of *742 court, the results of which may be offered in evidence. The number and qualifications of such experts shall be determined by the court."
Appellant supports his "chain of custody" arguments with citation of criminal cases. Clearly the purpose of the chain of custody evidentiary rule is to prevent evidence from being tampered with, or being lost, etc. In this civil proceeding, the above cited statutes are intended to provide the court with scientific evidence, to be reviewed and considered with the other evidence in reaching a decision. First we do not agree that there was a so-called "break" in the chain of custody. The tests were performed under the supervision of Dr. Bryant, and were conducted by technical staff. We find no evidence that they were not performed in accordance with standard practices. Further appellant's argument goes to the weight of the scientific evidence rather than its admissability.
Factually appellant argues that the failure of appellee to call her sister as a corroborating witness to certain facts when her sister was present in the courtroom mandates that there be a presumption in his favor that the facts were not true. We agree to a certain extent in this regard. The failure of a corroborating witness to testify when available does create a presumption that his testimony would be adverse. However, it is merely one factor that must be weighed along with the other evidence. In this same regard we note that appellant failed to produce evidence of payment of his car damages in order to establish a precise date. He also failed to submit to another blood test, even when ordered to do so by the lower court. These factors, although standing alone are inconclusive, are to be considered with the other evidence presented. Standing alone, perhaps these instances on the part of both parties kept the scales of justice balanced.
Appellant finally argues that, even assuming there was sexual intercourse between the parties on June 4, 1980 appellee failed to prove that that date was the date of conception. The testimony of medical experts is somewhat contradictory on this issue. Dr. LeBoeuf stated that assuming appellee's last menstrual cycle began May 23, 1980, and that the child was a post term baby, a June 4th or June 12th conception date was altogether possible. Dr. Wiedeman testified, "I don't think you can pin down any conception date because it's such an inexact science and its a pure estimate."
We conclude that the evidence of the exact conception date is another factor to be considered along with the other evidence submitted.
After review of all the evidence, applying the applicable standard of proof, we cannot say that the lower court was clearly wrong in its determination that appellant is the natural father of the minor, Brian Paul Schwab. All costs to be borne by appellant.
AFFIRMED.