MARVIN, Judge.
The divorced husband-father appeals a judgment rejecting his demands to disavow the paternity of a child born to the mother during the existence of the marriage. Plaintiff contends that he met the burden of CC Arts. 184, 187 and proved by a preponderance of the evidence facts that overcome the presumption of paternity.[1]
The marriage occurred June 10, 1977. The husband and wife physically separated April 17,1983. The child was born September 30, 1983. On March 1, 1984, plaintiff sued to disavow and for a divorce. Trial was held June 21, 1984. The judgment of June 27, 1984, granted a divorce, rejected plaintiffs disavowal of paternity, and ordered plaintiff to pay child support.
Plaintiff admitted that he had sexual intercourse with his wife during the three month period within which the child was conceived. Blood tests of the mother, child and plaintiff husband were performed by Linda Armstrong of the Northwest Crimi-nalistics Laboratory, who was accepted by the trial court as an expert in blood testing for paternity determinations. After consultation with Pat Wojtkiewicz, another employee of the laboratory with the same expertise, Ms. Armstrong determined the possibility and probability of paternity from the tests. Ms. Armstrong concluded that the plaintiff ex-husband could be excluded as the father of the child, “based upon one second order exclusion in [the] Erythrocyte Acid Phosphatase [EAP] blood group system.” The EAP test is only one of nineteen tests which were performed by Ms. Armstrong.[2] See generally 22 Loy. L.R. 965 (1976).
On cross-examination Ms. Armstrong explained that “A first order exclusion ... is based upon something that the child had that neither the mother or father has ... A second order exclusion is where the child has what the mother has, but does not have an allele that should have been inherited from the father.”[3] Ms. Armstrong explained that a first order exclusion is a 100 percent exclusion and that a second order exclusion is always something less than 100 percent.
Ms. Armstrong then explained the second order exclusion in this case: “In other words, in this particular group, in the Erythrocyte Acid Phosphatase, Mr. Welch has an EAP type B, the mother is a BA and the child is an A. [I]n order for Mr. Welch to be the father [under this test], then the child would have to inherit that B allele and the child would be a BA, also. In other words, the mother has the A allele that could account for that allele [in the child], but the child does not have the B allele from the father [that the child should have under the EAP test].” Brackets supplied.
Ms. Armstrong further explained that under the EAP test, one percent of the male Caucasian population has a “null” allele [which does not express itself in the test], and that if Mr. Welch is in this group of one percent, the absence of the B allele *947 in the child would be accounted for or explained. See fn. 3. Ms. Armstrong also testified that there is no existing test which can determine whether a person has a null allele.
Ms. Armstrong calculated a paternity index from the other 18 tests which showed that plaintiff was 2.2 times more likely to be the child’s father than any other randomly selected Caucasian male, a 60 percent relative probability that plaintiff was the father. This calculation, however, did not include the second order exclusion revealed by the EAP tests.
The issue, squarely posed, is whether the trial court, in the face of the second-order 99 percent exclusion, erred in finding that plaintiff failed to meet the burden of proof under CC Arts. 184, 187.
The preponderance of the evidence test for disavowal under CC Art. 187 has been interpreted as requiring proof of facts susceptible of independent verification, or of corroboration by physical data or evidence, such as scientific tests and the verifiable physical circumstance of remoteness. Mock v. Mock, 411 So.2d 1063, 1066 (La. 1982). This is a heavier than usual preponderance of the evidence burden, even though significantly more liberal than before the 1976 amendment of the paternity articles of the Civil Code. Mock, supra.
The presumption of legitimacy (under CC Art. 184) is overcome if the court finds that the conclusions of the blood test experts, based on the tests, show that the husband is not the father of the child. LRS 9:397.-3.[4] Among other proof, the husband must show that his paternity is negated by blood tests to successfully disavow. Mock, supra. See also Dugas v. Henson, 307 So.2d 650 (La.App. 3d Cir.1975), writ refused.
The conclusion of the expert admits a possibility of plaintiff being the father of the child as contemplated by LRS 9:397.2.
“If the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. If the experts conclude that the blood tests show the possibility of the alleged father’s paternity, admission of this evidence is within the discretion of the court, depending upon the infrequency of the blood type.”
The sections of the blood test law must be construed with the paternity articles of the Civil Code when they are relied on in an action to disavow a child conceived by the wife during the time the husband admits or is found to have had intercourse with her.
The trial court did not comment on the opinion evidence but emphasized the husband’s admission of sexual intercourse with the wife surrounding the time of conception of the child. The possibility of the alleged father’s paternity, depending upon the infrequency of the blood type, is to be accorded weight by the trial court in the light of the other evidence. See LRS 9:397.2 quoted supra. See LRS 9:397.3 quoted in fn. 4. Conversely, the conclusion of the expert, based on the tests, does not show that the husband is not the father of the child, but shows only that he may not be the father if he is not in the one percent of the male Caucasian population with a null or silent allele under the EAP group test.
We hold then that where there is a possibility of the husband’s paternity because of his admitted intercourse with the wife surrounding the time of conception of the child that is acknowledged by an expert conclusion based on blood tests — even though a one in a hundred possibility — the trial court does not err in concluding that the husband has failed to meet his burden of proof to disavow the child. Mock, supra; *948 LRS 9:397.2 — .3; CC Arts. 184, 187; Dugas, supra.
At appellant’s cost, the judgment is AFFIRMED.

. CC Art. 187 reads:
"The husband can disavow paternity of a child if he proves by a preponderance of the evidence any facts which reasonably indicate that he is not the father.”

. The other tests performed were:
ABO blood group; Rh blood group; MNSs blood group; Duffy blood group; Kell blood group; Kidd blood group; esterase-D; phospho-glucomutase; glyoxalase 1; adenylate kinase; adenosine deaminase; haptoglobin; group-specific component; transferrin; peptidase A; carbonic anhydrase 11; hemoglobin; glucose, 6-phosphate & dehydrogenase.

.Allele is defined as "one of two or more alternative forms of a gene occupying corresponding sites (loci) on homologous chromosomes, any two of which may be carried by a given individual and which determine alternative characters in inheritance.” A null allele is sometimes called a silent allele, which is defined as "one which has no detectable expression." Dorland’s Illustrated Medical Dictionary, W.B. Saunders Company, 1974.

. LRS 9:397.3 reads:
"The presumption of legitimacy of a child born during wedlock is overcome if the court finds that the conclusions of all the experts, as disclosed by the evidence based upon the tests, show that the husband is not the father of the child.”