LABORDE, Judge.
Plaintiff, Christine Cunningham, filed a paternity suit seeking to have defendant, *1316 Robert Earl Dicarlo, declared the father of her minor child, Aimee Chantelle Cunningham. She also sought child support for Aimee. After a trial on the merits, the trial court found in favor of the plaintiff and ordered the defendant to pay child support in the amount of two hundred dollars ($200.00) per month retroactive to the date of the filing of the petition. Defendant appeals, claiming that plaintiff failed to prove by a preponderance of the evidence that he is the father. We affirm.
PACTS
Christine Cunningham testified that she became pregnant during the first week of November, 1974; and gave birth to a daughter on August 22, 1975. She also testified that she had a sexual relationship with the defendant from May, 1973, until February, 1975, when the defendant learned of her pregnancy. Plaintiff stated that she did not have sexual relations with any other man during the time she dated defendant. Several witnesses also testified that to their knowledge, Christine Cunningham did not date any other man during this period.
Robert Dicarlo admitted being sexually intimate with plaintiff in 1974 while he was a student at Northwestern State University, but claimed that he also dated other women during this period. He testified that he did not remember whether he was sexually intimate with plaintiff in November, 1974. However, he could not rule out the possibility that he was the child’s father. He testified as follows:
“Q Okay. So, you were sexually intimate with her?
A Yes.
Q In November of 1974?
A It could have been November.
Q So, if the child was conceived in November, 1974, you could be the father, is that correct?
A I guess that’s correct.”
Christine Cunningham’s aunt, Evelyn Landry, testified that she called Robert Dicarlo on the phone in January or February 1975, after learning that Christine was pregnant. Landry testified as follows:
“Q Did he talk about — was there any discussion of him being the father?
A I asked him.
Q You asked him what?
A If he thought — if he was the father.
Q And what did he say?
A He said, ‘Yes that wasn’t the problem.’ That the way he was and the way Chris was they couldn’t make it together. And then I agreed with him.”
Robert Dicarlo testified that he could not recall the telephone conversation with Evelyn Landry.
BURDEN OF PROOF
LSA-C.C. art. 209 establishes the burden of proof applicable in actions for filiation. It states in pertinent part:
“A. A child not entitled to legitimate filiation nor filiated by the initiative of the parent by legitimation or by acknowledgment under Article 203 must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding instituted by the child or on his behalf within the time limit provided in this article.”
Since Christine Cunningham was unmarried and had never been married at the time of her daughter’s birth, Aimee is not entitled to legitimate filiation. Nor was Aimee legitimated or formally acknowledged under LSA-C.C. art. 203.[1] Thus, the plaintiff must prove filiation by a preponderance of the evidence.
ACKNOWLEDGMENT
Defendant argues that the plaintiff did not produce evidence that he ac *1317 knowledged the child either in public or in private. An informal acknowledgment must be of a continuous, habitual and unequivocal nature and of sufficient frequency that there can be little doubt that the alleged father truly believes himself to be the father of the child. IMC Exploration Co. v. Henderson, 419 So.2d 490, 508 (La.App. 2nd Cir.), writ denied, 428 So.2d 1149 (La.1982). We agree that defendant’s statement to Evelyn Landry does not constitute an informal acknowledgment. However, this finding does not prevent a determination of paternity. The means by which the plaintiff can meet her burden of proof has been expanded by the legislature so that informal acknowledgment is merely one and not the sole method of proving filiation. Official comment (b) to LSA-C.C. art. 209 expressly provides that proof of filiation may include, but is not limited to, informal acknowledgment. Furthermore, even though defendant’s statement does not constitute an informal acknowledgment, it is relevant to a consideration of whether plaintiff has satisfied her burden of proof.
BLOOD TESTING
Defendant also argues that Christine Cunningham’s failure to produce a court-appointed expert or to introduce into evidence the results of the court-ordered blood test, create a presumption that the production of that evidence or witness would be detrimental to her cause. The record reveals that on plaintiff’s request, the trial court ordered that blood tests be conducted on defendant pursuant to LSA-R.S. 9:396 of the Uniform Act on Blood Tests to Determine Paternity.
LSA-R.S. 9:396 states:
“Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child and alleged father to submit to the drawing of blood samples and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.”
Pursuant to LSA-R.S. 9:397 [2], the blood samples were taken at United Blood Services of Lafayette on February 17, 1987. However, after the blood testing was completed, plaintiff did not file a written report of the test results certified by sworn affidavit pursuant to LSA-R.S. 9:397.3.[3] Nor *1318 did plaintiff call the court appointed expert who conducted the blood tests to testify at trial.
We recognize that the failure to introduce the results at trial or to produce an available corroborating witness to testify raises the presumption that the testimony would have been adverse. This presumption is, however, only applicable when the failure to produce evidence is unexplained. Babineaux v. Black, 396 So.2d 584, 586 (La.App. 3d Cir.1981).[4] Even if relevant in the instant case, this presumption is merely one factor that must be weighed along with other evidence. Schwab For & On Behalf of Schwab v. Galuszka, 463 So.2d 737, 742 (La.App. 4 Cir.), writ denied, 464 So.2d 1386 (La.1985), U.S. cert. den., 474 U.S. 803, 106 S.Ct. 37, 88 L.Ed.2d 30 (1985).
The trial court determined that there was sufficient evidence of paternity in this case notwithstanding any consideration of blood test results. Admittedly, this is a close decision, and had plaintiff presented the blood test results into evidence, our task would be simpler. Nevertheless, after carefully reviewing the record as a whole, and taking into account plaintiffs omission, we agree with the trial court that the blood test results were not required to prove filiation in this case.[5]
TRIAL COURT’S FINDING
Defendant also contends that plaintiff failed to prove by a preponderance of the evidence that defendant is the father of her child. The trial court’s reasons for judgment reflect that it accepted as credible Christine Cunningham’s testimony and the testimony of her corroborating witnesses. Evidence produced by plaintiff included her testimony about the sexual relationship which existed between her and the defendant during the period of the child’s conception. She testified that she had engaged in sexual intercourse, exclusively with the defendant during this time. Defendant introduced no persuasive evidence to contradict plaintiff’s testimony. In fact, defendant acknowledges in his brief that “the parties were having a sexual relationship at the time of conception, and that she [Christine Cunningham] was not having sexual relations with anyone else at that time.”
After reviewing the record as a whole, and the trial court’s reasons for judgment, we conclude that there is a reasonable factual basis for its determination. The trial court considered the content of the testimony and the demeanor of the witnesses and found that plaintiff had established paternity by a preponderance of the evidence. We are not at liberty to disturb this determination of the trial court unless it was manifestly erroneous. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
For the foregoing reasons, we affirm the judgment of the trial court. All costs of appeal are to be paid by defendant.
AFFIRMED.

. This article provides:
The acknowledgment of an illegitimate child shall be made by a declaration executed before a notary public, in the presence of two witnesses, by the mother and father or either of them, or it may be made in the registering of the birth at baptism of such child, (footnote omitted)

. LSA-R.S. 9:397 provides that:
"The tests shall be conducted by a court appointed expert or experts qualified as examiners of blood samples for inherited characteristics, including but not limited to blood and tissue type. The number and qualifications of such expert or experts shall be determined by the court.”

. LSA-R.S. 9:397.3 provides:
“A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test made by the same laboratory or expert. If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
*1318 D. If the court finds that the conclusions of all the experts as disclosed by the reports, based upon the tests, are that the alleged father is not the father of the child, the question of paternity shall be resolved accordingly. If the experts disagree in their findings or conclusions, the question shall be submitted upon all the evidence. The tests and the testimony of the mother alone shall not be sufficient grounds for determining that the man is the father of the child.”

. Plaintiff claims that financial considerations prevented her from introducing the results of the blood test into evidence and calling the expert witness to testify. She also asserts in her brief that the expert was not available to testify.

. For the sake of completeness, we note that a copy of the test results attached to plaintiffs brief indicates a 99.99% degree of probability that Robert Dicarlo is the father of Aimee Cunningham. Of course, neither this court nor the trial court were at liberty to consider these findings which were not contained in the record. We note also that there is no evidence that defendant sought to obtain the blood test results.