582 So.2d 940 (1991)
STATE of Louisiana in the Interest of Christopher LAWRENCE, Plaintiff,
v.
James Edward HARRELL, Defendant.
No. 22442-CA.
Court of Appeal of Louisiana, Second Circuit.
June 19, 1991.
*941 William J. Guste, Jr., Atty. Gen., Baton Rouge, James A. Norris, Jr., Dist. Atty., Scott Leehy, Asst. Dist. Atty., Monroe, for plaintiff-appellant.
Malcolm Decelle, Jr., Monroe, for defendant-appellee.
Before LINDSAY, HIGHTOWER and BROWN, JJ.
HIGHTOWER, Judge.
This appeal, in a paternity proceeding, challenges the rejection of appellant's demands after the trial court concluded that the evidence did not establish filiation. For reasons hereinafter expressed, we reverse.

FACTS
The State of Louisiana, in accordance with authority granted by LSA-R.S. 46:236.1(F), filed a petition to establish filiation on behalf of the minor, Christopher Lawrence. After the defendant putative father, James Edward Harrell,[1] filed an answer denying paternity, the State obtained a court order directing the analysis of blood samples from this individual, the child, and the mother. Subsequently, pursuant to LSA-R.S. 9:397.3(A), a written report of the test results was filed into the suit record, with notice and copies being sent by certified mail to defendant and his attorney. The alleged father did not question the analysis, which reflected a 99.98 percent probability of paternity by him, and a combined paternity index of 6318 to 1.
When Harrell still declined to acknowledge paternity, the matter proceeded to trial. Janyce Lawrence, the mother, stated that she met defendant, a mailman, at her place of employment, a bail bond agency, in June 1987. After dating approximately one month, they began having sexual relations. She further testified:
Q. And did you use birth control, did you use any kind of birth control?
A. He used a condom.
Q. Did he use a condom each and every time?
A. Yes, but he didn't use until right before climax.
Q. How often did you have sex with the defendant?
A. Maybe twenty times.
Q. And did you and the defendant ever live together?
A. No, we did not.
Q. Because of your sexual relations with the defendant, did you become pregnant?
A. Yes, I did.
Q. And when did you become pregnant?
A. It had to be some time in August.
....
Q. August of what year?
A. '87.
Q. And were you having sex with the defendant up until the time you got pregnant?
A. Yes, I was.
Q. Did you have sex with anyone else just before you became pregnant?
A. No, I did not.
According to Mrs. Lawrence, prior to this affair, her last intimate encounter occurred *942 with her former husband, sometime before March 15, 1987. They separated shortly thereafter, and her then spouse moved to Dallas, Texas in June.
In September, a physician confirmed her suspicions of pregnancy. When she advised defendant, however, he declined to discuss the matter and she never heard from him again. Nor did he ever concede the child to be his issue, offer any financial assistance, or give the infant gifts after its birth on May 8, 1988.
The State also presented the testimony of Mrs. Lawrence's mother, Betty Grant, who related that her daughter lived with her during the summer of 1987, and that defendant first visited her home in June. She advised that she would have known if Janyce dated anyone other than defendant during that time. There was, however, no one else.
Jeanette Johnson, who worked across the street from the bail bond office, observed defendant take her friend, Janyce, to lunch each day during the time involved. This witness further remembered the couple kissing in the parking lot and behaving in an intimate way. Indeed, Janyce mentioned no man other than defendant, even after he ceased seeing her.
With testimony concluded, the State moved to introduce the entire suit record, into which the laboratory test results had previously been filed. The trial judge allowed its admission into evidence without objection from defendant. Neither taking the stand nor presenting testimony of others to rebut the assertions of the State's witnesses, defendant rested his case.
The lower court immediately thereafter rejected all demands, specifically citing the failure of the State to introduce the blood test report. This ensuing appeal presents two assignments of error.

ASSIGNMENT OF ERROR NO. 1
First, the State objects to the trial court's refusal to admit the testing report into evidence although it constituted a part of the suit record introduced.
It is settled that a pleading is "filed in an action" when it has been delivered to the clerk for that purpose. American B & Tr. Co. of Lafayette v. Huval Fin., 460 So.2d 91 (La.App.3d Cir.1984); Squatrito v. Barnett, 338 So.2d 975 (La.App. 4th Cir. 1976). Once the document is so received by the clerk, it then constitutes part of the record. LSA-C.C.P. Art. 253. See Succession of Greene, 158 La. 123, 103 So. 532 (1925); State v. Mitchell, 153 La. 585, 96 So. 130 (1923); Wheeling Pottery Co. v. Levi, 48 La.Ann. 777, 19 So. 752 (La. 1896).
LSA-R.S. 9:397.3(A), anent blood testing in paternity actions, mandates that the certified report of test results be placed in the suit record and that a notice of such filing be sent by certified mail to all parties. The present record clearly contains the findings of the laboratory, the supervising expert's affidavit, and verification that the defendant and his attorney received a copy of these documents by certified mail. Unless the testing procedure is timely challenged, the report "shall be admitted in evidence at trial" as prima facie proof of its contents. LSA-R.S. 9:397.3(B).
Harrell entered no pleading to contest either the testing procedure or results. In fact, even at a pre-trial conference, his attorney indicated no anticipation of evidentiary problems despite the State's listing of the test results as an expected exhibit. Moreover, upon admission of the entire record into evidence, and although well informed of the presence of the blood analysis, the defense asserted no objection. Cf. Barrois v. Zeringue, 127 So.2d 790 (La. App. 4th Cir.1961), finding a party, who failed to object to the offer of a former record, effectively estopped from opposing consideration of the evidence contained therein.
In order to insure evaluation of previously filed documentary evidence, better practice would call for counsel to itemize those filings which he desires reviewed, rather than force the court to second-guess the purpose of his in globo submission. In certain instances, the court or opposing counsel may require a declaration as to those items, within the offering, considered relevant and material. Here, however, all parties well understood that the uncontested, readily identifiable report constituted *943 part of the record presented in evidence. Under these circumstances, the analysis should have been evaluated by the fact trier as prima facie proof of its contents. In not doing so, the lower court erred.

ASSIGNMENT OF ERROR NO. 2
By the second assignment of error, the State contends the trial court applied an improper standard of proof by requiring more than a preponderance of evidence.
At the conclusion of the trial, the district judge stated:
There's no doubt in the Court's mind that the [defendant is] the father of this child. The State did not introduce into evidence the report of the laboratory which conducted the blood test. For that reason the demands of the State are rejected.
Pursuant to LSA-C.C. Art. 209(A), a child seeking to establish filiation to a living parent must do so by a preponderance of the evidence. That is to say, it must be shown that the fact sought to be proved is more probable than not. Hines v. Williams, 567 So.2d 1139 (La.App. 2d Cir. 1990), writ denied, 571 So.2d 653 (La.1990). Clearly, results of blood tests are not required where sufficient evidence of paternity otherwise exists. Cunningham v. Dicarlo, 539 So.2d 1315 (La.App.3d Cir.1989).
The unrefuted testimony of the natural mother established that, after March 1987, she had sexual relations with no man other than defendant. Her mother and friend corroborated the exclusivity of that relationship. Moreover, based upon his expression of no doubt concerning paternity, the trial judge apparently believed the State's witnesses. Plainly then, the totality of the evidence preponderates that appellee is the biological father of the child.
Whether there has been adequate proof of descent from an alleged parent is a question of fact. Hines, supra; Worley v. Thirdkill, 506 So.2d 1288 (La.App. 2d Cir.1987). And, a trial court's determination of factual issues will not be disturbed absent manifest error. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). In the present case, however, upon applying the appropriate standard of proof, i.e., a preponderance of the evidence, we find the lower court clearly wrong in rejecting the State's demands.

CONCLUSION
Considering the trial court's expressed evaluation, apparently directed at the testimony alone, the State established its case by a preponderance of the evidence. Defendant in his brief, however, maintains that the judge also reviewed the blood test report before advancing the previously quoted statement.
First of all, though, nothing of record supports that assertion by the defense. Second, if such a sequence actually occurred, the events again buttress our earlier conclusion that all participants, including the court, stood well informed of the presence of the report within the record. Clearly then, as we stated, the blood analysis should have been considered as prima facie proof, further bolstering the other evidence.

DECREE
For the foregoing reasons, the judgment of the trial court is reversed and vacated. Defendant, James Edward Harrell, is recognized as the biological father of the minor child, Christopher Lawrence. All costs, here and below, are to be borne by defendant-appellee.
REVERSED.
NOTES
[1] The conception and birth of this child occurred during the mother's marriage to another individual who has taken no action to disavow paternity. Nonetheless, the State is empowered to institute these proceedings against the alleged biological father. LSA-R.S. 46:236.1 F(1); State, through DHHR v. Hinton, 515 So.2d 566 (La.App. 1st Cir.1987); State, through DHHR v. Guillory, 407 So.2d 1327 (La.App.3d Cir.1981). See also Smith v. Cole, 553 So.2d 847 (La.1989).