600 So.2d 90 (1992)
STATE of Louisiana In the Interest of Truly Leon EZELL, Plaintiff-Appellant,
v.
Thomas Leon EVANS, Defendant-Appellee.
No. 23598-CA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
*91 Ouachita Dist. Atty. Jerry L. Jones by Brenda M. Howell, Monroe, for plaintiff-appellant.
Aimee Lirette, West Monroe, for defendant-appellee.
Before SEXTON, NORRIS and STEWART, JJ.
SEXTON, Judge.
In this action by the State of Louisiana to establish paternity pursuant to the provisions of LSA-R.S. 46:236.1, et seq., the trial court found that the state failed to carry its burden of proving the defendant, Thomas Leon Evans, is the natural father of the minor, Truly Leon Ezell. The state now appeals. We reverse and remand.
The state filed this action against the defendant in September 1990. The defendant filed an answer denying paternity, and the state subsequently obtained a court order directing that blood tests be taken pursuant to LSA-R.S. 9:396, et seq. After the blood tests were completed, a written report of the test results was filed into the suit record, and notice and copies were sent via certified mail to the defendant and his attorney. At trial, the entire record, including the blood test results, was introduced into evidence without objection. The test results showed a combined paternity index of 128 to 1. The results also established the probability of the paternity of defendant to be 99.23 percent, as compared to an untested, unrelated man of the North American Caucasian population.
At trial, the state first called the defendant on cross-examination. He admitted having a sexual relationship with the child's mother, Frances Ezell, although his testimony was equivocal as to when this sexual relationship occurred. Initially, the defendant indicated that he did not remember when he established a sexual relationship with Ms. Ezell, although it could have been in 1977. Later, on direct examination, the defendant indicated that he married Barbara Evans in 1976, and that he had no sexual relations with Ms. Ezell while married to Barbara Evans. Because the child was born on April 20, 1978, the issue of *92 whether the defendant had a sexual relationship with Ms. Ezell in the summer of 1977 was of particular importance. The defendant denied being familiar with the child, and denied visiting with him except for one occasion in November 1989 when he met the child and Ms. Ezell at a restaurant. He denied having a conversation with the child at that time and denied ever having told anyone that the child was his son. Nevertheless, he acknowledged that he had never denied being the father of the child, although he knew Ms. Ezell "was telling everybody that it was mine."
Ms. Ezell testified that she had begun dating and having a sexual relationship with the defendant in the latter part of 1976. This relationship continued through 1977. She specifically testified to having a sexual relationship with the defendant in the months of April through July of 1977. She first realized that she was pregnant in August 1977. Without equivocation, she testified that the defendant was the father and that she did not have a sexual relationship with anyone other than the defendant from April 1977 through September 1977. Ms. Ezell testified that she and the defendant spent the night about once a week and on weekends at the defendant's mother's house. She also testified that she and the defendant lived together for about two months after the child was born. The defendant denied that Ms. Ezell ever spent the night at his mother's home and further denied living with Ms. Ezell. With respect to the November 1989 meeting at the restaurant referred to by the defendant, Ms. Ezell indicated that the defendant had initiated the contact and had at that time told her son that he was his father. She also indicated that after this meeting, she and her son visited the defendant on several occasions.
Evelyn King, Ms. Ezell's sister, testified that she was aware of the relationship between Ms. Ezell and the defendant. Mrs. King testified that during the period of time from April to July of 1977, she would have known if Ms. Ezell had dated anyone else, and that Ms. Ezell did not do so. She testified that the defendant and Ms. Ezell lived together for a period of time in 1977 during which Mrs. King and her husband visited them. Mrs. King indicated that the visits took place at the defendant's mother's home in Monroe. Mrs. King further testified that after the child was born, Ms. Ezell, the child, and the defendant moved into a trailer together. According to Mrs. King, during this time the defendant referred to the child as his son.
The last witness was the child, Truly, who was then 13 years old. He testified to first meeting the defendant at the restaurant referred to by the defendant and Ms. Ezell in their testimony. Truly stated that he had a conversation with the defendant in which he asked the defendant if he was his father and the defendant responded affirmatively. Truly was also shown baby pictures of himself by the defendant at that initial meeting. Other than the meeting at the restaurant, Truly indicated that he had seen the defendant several additional times when Truly and his mother went to the defendant's house and visited him. Truly stated that he had asked the defendant again whether he was his father and that the defendant had again responded affirmatively.
At the conclusion of the trial, the trial court indicated concern over Ms. Ezell's failure to inform the defendant of her pregnancy as soon as she realized she was pregnant. With respect to the child's testimony the trial court stated that "the fact that he says this man told him that he was his Dad does not constitute any proof to me that he, in fact, was." With respect to the blood test results, the trial court stated:
The law provides that blood tests are, of course, admissible and the blood test has been admitted in this case and the blood test result is high but to me the test reflects that it is a certain percentage of an untested Caucasian race in America or wherever they are talking about. It doesn't really prove anything to me, the test itself does not.
Although the court acknowledged that the test results were evidence, the court held that the test results must be coupled with factual evidence, that "the facts of conception" must be proven by the state, and that *93 with the "confusion of the testimony" the state failed to meet its burden. A judgment was signed in favor of the defendant, denying paternity. The state seeks review of that judgment.
Where, as here, the alleged parent is alive, a plaintiff bears the burden of proving paternity by a preponderance of the evidence. LSA-C.C. Art. 209; State in Interest of Lawrence v. Harrell, 582 So.2d 940 (La.App.2d Cir.1991); State v. Stringer, 567 So.2d 758 (La.App.2d Cir.1990). The sufficiency of proof of paternity is a question of fact which should not be disturbed on appeal in the absence of manifest error. Hines v. Williams, 567 So.2d 1139 (La.App.2d Cir.1990), writ denied, 571 So.2d 653 (La.1990); State v. Stringer, supra.
In the instant case the blood test results showed that the defendant's probability of paternity was 99.23 percent as compared to an untested, unrelated man of the North American Caucasian population. Where, as here, the scientific testing procedure is not timely challenged, the report shall be admitted into evidence and will constitute prima facie proof as to its contents. LSA-R.S. 9:397.3 B; State in Interest of Lawrence v. Harrell, supra. Although scientific testing alone is insufficient to prove paternity, it is persuasive and objective testimony that can help establish proof by a preponderance of the evidence. LeBlanc v. LeBlanc, 497 So.2d 1361 (La.1986); State v. Stringer, supra.
Ms. Ezell testified that during the period of Truly's conception, she had a sexual relationship with only the defendant. This testimony was corroborated by her sister, Mrs. King. Even the defendant admits to a sexual relationship with Ms. Ezell and his testimony as to the time of that relationship is confusing at best. We note that defendant initially stated that this relationship extended into 1977, which was the apparent time of Truly's conception. Both Ms. Ezell and Mrs. King testified that the defendant, Ms. Ezell, and Truly lived together, apparently as a family unit, for two months shortly after Truly's birth. Finally, Truly testified on several occasions the defendant admitted that he was the boy's father and showed Truly baby pictures of himself during their initial meeting.
Considering the significant probability of defendant's paternity, as evidenced by the scientific test results, together with the other evidence presented at trial, we must conclude that the trial court was manifestly erroneous in finding the state failed to establish by a preponderance of the evidence that the defendant was the natural father of the minor, Truly Leon Ezell.
Accordingly, the judgment of the trial court is reversed and it is hereby ordered, adjudged, and decreed that the defendant, Thomas Leon Evans, is recognized as the natural father of Truly Leon Ezell. The case is remanded to the trial court for further proceedings. All costs are assessed to the defendant.
REVERSED AND REMANDED.