721 So.2d 90 (1998)
STATE of Louisiana in the Interest of Dylan ROBINSON, Appellant,
v.
Matthew SIMS, Appellee.
No. 31333-JAC.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1998.
*91 Stephen A. Jefferson, Monroe, for Appellee.
Richard Ieyoub, Attorney General, Jerry L. Jones, District Attorney, Arthur Gilmore, Jr., Assistant District Attorney, for Appellant.
Before NORRIS, BROWN and GASKINS, JJ.
GASKINS, Judge.
In this action for paternity and child support, the State of Louisiana appeals a finding that it failed to prove that the defendant, Matthew Sims, is the father of the minor child, Dylan Robinson. For the following reasons, we reverse the trial court judgment and remand the matter for further proceedings.

FACTS
In early 1994, the defendant met Nakika Robinson while they both worked at H & R Block. The defendant was much older than Ms. Robinson and he was married. A dating relationship developed and both parties admitted that they had a sexual relationship beginning in February or March 1994. Ms. Robinson contends that in March 1994 she became pregnant with the minor male child in question in this case. The baby, Dylan Robinson, was born on January 10, 1995.
The State filed suit against the defendant on behalf of the child to establish paternity and obtain child support. Blood tests were conducted and on February 21, 1997, a hearing on the merits was held. The blood test results were admitted without objection. The test showed that Mr. Sims' paternity of the child could not be excluded and that there was a 99.98% probability that Mr. Sims is the father. Ms. Robinson testified that she had an intimate relationship only with Mr. Sims during the time the child was conceived. She also claimed that the defendant came to see her in the hospital when the child was born and that he brought the child milk and diapers on at least one occasion. The defendant based his contention that he is not the father of the child on his belief that Ms. Robinson was involved with another man during the time the child was conceived. Regarding the diapers and milk furnished to the child, the defendant stated that Ms. Robinson's house had burned and he was merely helping out.
At the close of the hearing, the trial court gave oral reasons for finding that the State had not sufficiently proved Mr. Sim's paternity of the child. The trial court was not satisfied with the blood test report, stating that the reports from a company previously used for such tests were much more clear than that submitted in this case. The court stated, "This report has got a bunch of numbers on it that quite frankly don't mean a hill of beans to the Court...." The court set forth that paternity testing does not establish paternity, but is a tool. The court found that the exact date of the conception was not firmly established and there was a showing that Ms. Robinson apparently was seeing *92 another man besides the defendant at the time the child was conceived. The court also noted that the defendant's explanation of his motive for bringing diapers and milk to the child was as valid as the State's contention that these gifts were indicative that Mr. Sims is the father of the child. The court concluded that the State failed to carry its burden of proof by the required evidentiary standard. The State appealed the trial court ruling.

PROOF OF PATERNITY
On appeal, the State argues that the trial court's finding that it failed to establish Mr. Sim's paternity of the child by a preponderance of the evidence was manifestly erroneous. According to the State, Mr. Sims admitted having sexual intercourse with Ms. Robinson at about the time conception occurred, that they continued their relationship after he knew about the pregnancy and that they engaged in sexual relations on several occasions. The State also argues that the items purchased for the child by Mr. Sims are classic examples of informal acknowledgment of the child.
The State further objects to the rejection by the trial court of the blood test results. The plaintiff cites La. R.S. 9:397.3(B)(2)(b). This statute provides that a certified report of blood or tissue sampling, which indicates by a 99.90% threshold probability that the alleged father is the father of the child, creates a rebuttal presumption of paternity. Because the blood test result in this case shows that the probability of paternity exceeds the threshold amount established in the statute, the presumption applies and the State contends the defendant failed to rebut the presumption that he is the father of this child. The State urges that there is no evidence of a sexual relationship between Ms. Robinson and any other man during the time the child was conceived and that the trial court was required to give the blood test the weight allowed by law. For the following reasons, we reverse the trial court's ruling and find that the State proved the defendant's paternity of the child by a preponderance of the evidence.

Legal Principles
When the alleged parent is alive, the burden of proving paternity is by a preponderance of the evidence. La. C.C. art. 209(A); State in the Interest of Vinson v. Smith, 29,464 (La.App.2d Cir.6/18/97), 697 So.2d 628; State, Department of Social Services v. Thomas, 27,248 (La.App.2d Cir.8/23/95), 660 So.2d 163; Litton v. Litton, 624 So.2d 472 (La.App. 2d Cir.1993), writ denied 93-2657 (La.1/7/94), 631 So.2d 456; State v. Givens, 616 So.2d 259 (La.App. 2d Cir.1993). Simply stated, it must be shown that paternity by the defendant is more probable than not. State in the Interest of Vinson v. Smith, supra; State, Department of Social Services v. Thomas, supra. Proof of paternity is a factual question, and a trial court's determination of the issue should not be disturbed, absent manifest error. State in the Interest of Vinson v. Smith, supra; State, Department of Social Services v. Thomas, supra; Litton v. Litton, supra; State v. Smith, 605 So.2d 222 (La.App. 2d Cir.1992); State in the Interest of Ezell v. Evans, 600 So.2d 90 (La.App. 2d Cir.1992); State in the Interest of Lawrence v. Harrell, 582 So.2d 940 (La.App. 2d Cir.1991).
The purpose of blood analysis is either to exclude an accused male from the possibility of paternity, or, if an alleged father is not excluded, to calculate the odds that he would have passed the disclosed genetic markers to a particular child. State, Department of Social Services v. Thomas, supra; Litton v. Litton, supra; State v. Givens, 616 So.2d 259 (La.App. 2d Cir.1993); State v. Stringer, 567 So.2d 758 (La.App. 2d Cir.1990). Where, as here, the scientific testing procedure is not timely challenged, the report shall be admitted into evidence and will constitute prima facie proof as to its contents. La. R.S. 9:397.3(B)(2)(a); State v. Givens, supra; State in the Interest of Lawrence v. Harrell, supra.
In 1995, the Louisiana legislature added La. R.S. 9:397.3(B)(2)(b) to provide:
A certified report of blood or tissue sampling which indicates by a ninety-nine and nine-tenths percentage point threshold probability that the alleged father is the *93 father of the child creates a rebuttable presumption of paternity.
1995 La. Acts No. 1144, § 1. Therefore, upon the introduction of a blood test showing the alleged father to have a 99.90% or higher probability of paternity, it is presumed he is the father and the burden of proof shifts to him to rebut the presumption.

Discussion
As noted above, the blood test results in this case were admitted without objection and were in the proper form prescribed by statute. La. R.S. 9:397.3(A). There is no showing of a procedural error in the test. Accordingly, the test result is prima facie proof of its contents. We recognize the trial court's frustration with the blood test report which was not perceived as being as clear as reports previously used by that court. There are some numbers on the test report which are not fully explained. However, our jurisprudence contains numerous cases discussing the significance of probability of paternity and the paternity index in blood test reports. Using prior cases to aid in the interpretation of the lab results in the present case, we do not find, as did the trial court, that these test results are ambiguous in any way or so hard to understand that they should be completely discarded and discounted. With the probability of paternity and the paternity index being clearly set forth in this report, we are able to determine the significance of these numbers.
In this case, the percentage of probability that the defendant is the father of this child was determined to be 99.98%. Further, the report unambiguously shows a paternity index of 4940 which means that the odds are 4,940 to 1 that the defendant is the father of this child. According to the jurisprudence, this is a high paternity index and is strong proof of paternity. See Litton v. Litton, supra, 99.93% probability of paternity and a paternity index of 1359; State v. Givens, supra, 99.91% probability of paternity and a paternity index of 1064; State v. Smith, supra, 99.97% probability of paternity and a paternity index of 3473; State in the Interest of Lawrence v. Harrell, supra, 99.98% probability of paternity and a paternity index of 6318. Therefore, we find no valid reason for the trial court's complete disregard of the blood test results.
Because the presumption of paternity in this case is greater than 99.90%, the rebuttable presumption of paternity applies.[1] In addition, Matthew Sims admits that he engaged in sexual intercourse with the child's mother during the time of conception and for several months afterward. The defendant bore the burden of rebutting the presumption of paternity. He only showed that Ms. Robinson was frequently seen talking with another man, Roderick Harris, in her yard while she was dating the defendant. The defendant opined that the two were engaging in a sexual relationship, but he offered no proof of that fact.
Ms. Robinson testified that her sexual relationship with Mr. Harris did not begin until a later time, which was corroborated by Ms. Robinson's sister, Shalonda Robinson. It was shown at trial that Ms. Robinson later became involved with Mr. Harris and they had a child together. However, the fact that Ms. Robinson had a child with Roderick Harris some years after her rejection by the defendant and that she was talking to Mr. Harris during the time she was dating the defendant does not rebut the presumption that the defendant is the father of the child at issue in this case. Even though the experienced trial judge in this case apparently was not impressed with the testimony of the State's witnesses, the rebuttable presumption of paternity that operates here, combined with the defendant's admission of sexual intercourse with the mother during the time of conception, is sufficient to carry the State's burden of establishing the defendant's paternity of Dylan Robinson by a preponderance of the evidence.
*94 Based upon the record before us, we find that the trial court was manifestly erroneous in rejecting the blood test results and in failing to apply the presumption of paternity set forth in La. R.S. 9:397.3(B)(2)(b), which the defendant failed to rebut. The blood test result in this case of 99.98% probability that the defendant is the father of Dylan Robinson, combined with the defendant's admission that he engaged in sexual intercourse with the child's mother during the time of conception establishes by a preponderance of the evidence the defendant's paternity of this child. Accordingly, the trial court decision is reversed and the matter is remanded to the trial court for the taking of additional evidence on the issue of child support.

CONCLUSION
For the reasons stated above, the judgment of the trial court is reversed. We find that the evidence establishes that Matthew Sims is the father of Dylan Robinson. The matter is remanded for further proceedings to establish the defendant's child support obligation to his son.
REVERSED AND REMANDED.
NOTES
[1] We are aware that the rebuttable presumption of La. R.S. 9:397.3(B)(2)(b) has met with criticism regarding the dangers of relying exclusively upon scientific testing to prove paternity. See Christopher L. Blakesley, Scientific Testing and Proof of Paternity: Some Controversy and Key Issues for the Family Law Counsel, 57 La. L.Rev. 379 (1997). However, in the case sub judice, we also rely upon the defendant's admission.