823 So.2d 960 (2002)
STATE of Louisiana, Appellee,
v.
John Henry SCOTT, Appellant.
No. 34,949-KA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2002.
*962 Amy Ellender, Louisiana Appellate Project, Counsel for Appellant.
Richard Ieyoub, Attorney General, Robert W. Levy, District Attorney, A. Shawn Alford, Clifford R. Strider, III, Assistant District Attorney, Counsel for Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
GASKINS, J.
Following a jury trial, the defendant, John Henry Scott, was convicted of aggravated incest, a violation of La. R.S. 14:78.1. He was adjudicated a third-felony offender and was sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. For the reasons set forth below, we affirm the defendant's conviction, his adjudication as a third-felony offender, and his sentence.

FACTS
On May 8, 1999, the defendant and the victim, his 14-year-old daughter, left their residence to attend a relative's funeral. The defendant told the victim that they were going to walk to the home of a person who would give them a ride to the *963 funeral. He then led the girl onto a trail in the woods, telling her it was a shortcut to the individual's home.
Shortly after entering the woods, the defendant demanded that the victim undress. She refused and began to scream. The defendant forced her to the ground, removed her clothing, and stuffed a sock into her mouth to muffle her cries for help. The defendant first penetrated the victim with his fingers; he then raped her. Afterwards, he began crying and praying. He stated that he was sorry and told her not to tell her mother what had happened. He then allowed the victim to leave the area. She returned home and telephoned her sister and grandmother to report the rape. The police were summoned, and the victim was taken to a hospital for a medical examination.
On August 2, 1999, the defendant was arrested in Fort Worth, Texas. He was charged with aggravated incest. A jury convicted him as charged, and the defendant was originally sentenced to 20 years at hard labor, the maximum term of imprisonment for the offense. However, the state filed a habitual offender bill against the defendant. At a subsequent habitual offender hearing, the state introduced evidence of a 1988 conviction for distribution of marijuana and a 1995 conviction for simple escape, and the court adjudicated the defendant to be a third-felony offender. Pursuant to the mandatory provisions of the habitual offender statute, the trial court then sentenced him to life imprisonment at hard labor without benefit of parole, probation and suspension of sentence.
The defendant appealed. He asserted assignments of error presenting six issues for this court's consideration.

CHALLENGE FOR CAUSE
In his first assignment of error, the defendant argues that the trial court erred in denying his challenge for cause as to a prospective juror, Scott Richardson, thereby requiring him to use all of his peremptory challenges to exclude jurors.
An accused has the constitutional right to challenge jurors peremptorily, with the number of challenges to be fixed by law. La. Const. art. 1, § 17. Under La.C.Cr.P. art. 799, the defendant in the instant case was entitled to six peremptory challenges; he used all of them.
Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. To prove there has been reversible error warranting reversal of the conviction, the defendant need only show: (1) the erroneous denial of a challenge for cause; and (2) the use of all of his peremptory challenges. State v. Robertson, 92-2660 (La.1/14/94), 630 So.2d 1278.
A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially according to the law and evidence. State v. Eastin, 419 So.2d 933 (La.1982); State v. Wiley, 614 So.2d 862 (La.App. 2d Cir.1993); State v. Howard, 98-0064 (La.4/23/99), 751 So.2d 783. A trial court is vested with broad discretion in ruling on challenges for cause and these rulings will be reversed only when a review of the voir dire record as a whole reveals an abuse of discretion. State v. Howard, supra.
The defendant's challenge for cause as to Mr. Richardson was based upon statements indicating that he had problems with the requirement of finding each and every element of the offense proven beyond a reasonable doubt and also the *964 principle that a defendant is presumed innocent even though he does not put any evidence on to rebut the state's case. The grounds for which a juror may be challenged for cause are set forth in La. C.Cr.P. art. 797. Two of these grounds are pertinent here, namely, that "the juror is not impartial, whatever the cause of his partiality," and "the juror will not accept the law as given to him by the court." La.C.Cr.P. art. 797(2) and (4).
A review of the entire voir dire shows that Mr. Richardson's responses, as a whole, indicated that he could have been a fair and impartial juror. When the court asked Mr. Richardson if he understood the premise of the law which requires the state to prove guilt of the defendant as to each and every element beyond a reasonable doubt, he responded in the affirmative. When the trial judge asked Mr. Richardson if he could follow that premise of law, he answered, "Yes." Subsequently, the trial judge presented a hypothetical situation wherein the state proved guilt beyond a reasonable doubt as to all elements but one and the defense presented no evidence. When Mr. Richardson was asked how he would vote in that scenario, he answered, "Not guilty."
After further inquiry by the state, the defense, and the court, Mr. Richardson demonstrated a willingness and ability to decide the case impartially according to the law and the evidence. When a juror expresses a predisposition as to the outcome of a trial, a challenge for cause should be granted. Yet, if after subsequent questioning the juror exhibits the ability to disregard previous views and make a decision based on the evidence presented at trial, the challenge is properly denied. State v. Robertson, supra.
This assignment of error lacks merit.

MISTRIAL DUE TO PREJUDICIAL STATEMENTS
The defendant asserts in this assignment of error that the trial court erred in failing to grant his request for mistrial based upon three separate statements made throughout the course of the trial. The statements were: (1) the prosecutor referred to her co-counsel during jury selection as a "DNA expert"; (2) the mother of the victim stated the defendant had gone to jail prior to the alleged offense on a separate matter; and (3) a police officer testifying for the prosecution stated he knew of the defendant for 15 of his 24 years in law enforcement. The defendant argues that all three referenced statements were not curable by an admonition, but rather such a charge would only have served to bring further attention to the prejudicial remarks.
La.C.Cr.P. art. 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized under La.C.Cr.P. arts. 770 or 771. La.C.Cr. P. art. 770(2) provides for a mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and the remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. When such a remark is made by a witness, however, La.C.Cr. P. art. 771 provides a mistrial is not required, if the court is satisfied an admonition to the jury is sufficient to assure the defendant of a fair trial.
A mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. State v. Richardson, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, writ denied, XXXX-XXXX (La.10/26/01), 799 *965 So.2d 1151. A mistrial under the provisions of La.C.Cr. P. art. 771 is at the discretion of the trial court and should be granted only where the prejudicial remarks of the witness make it impossible for the defendant to obtain a fair trial. State v. Johnson, 96-1834 (La.App. 1st Cir.6/20/97), 697 So.2d 288. The decision to grant or deny a mistrial lies within the sound discretion of the trial court and will not be disturbed absent a clear showing of that discretion. State v. Richardson, supra. The jurisprudence has held that an impermissible reference to another crime deliberately elicited of a witness by the prosecutor would be imputable to the state and would mandate a mistrial. However, unsolicited and unresponsive testimony is not chargeable against the state to provide a ground for mandatory reversal of a conviction. State v. Thompson, 597 So.2d 43 (La.App. 1st Cir.1992), writ denied, 600 So.2d 661 (La.1992). A statement is not chargeable to the state solely because it was in direct response to questioning by the prosecutor. State v. Ondek, 584 So.2d 282 (La.App. 1st Cir.1991), writ denied, 586 So.2d 539 (La.1991).

Reference to co-counsel
The first statement which the defendant challenged and moved for mistrial occurred during jury selection when the prosecutor referred to her co-counsel as a DNA expert. The defense counsel objected on the basis that the purported DNA expert, an assistant district attorney, was not going to be a witness at trial but would be the prosecutor examining the DNA expert. Requesting a mistrial, the defense claimed the statement was prejudicial to the defense as it gave the impression to the jury that the prosecutor, who was not a witness in the case, would be adding credibility to the DNA expert's opinion because of the inference that the prosecutor was also an expert in the field. Finding that the statement was not such that it would prejudice the jury, the judge denied the mistrial motion. Defense counsel declined the judge's offer to admonish the jury to disregard any reference to the prosecutor as an expert.
Under these circumstances, we do not find any abuse of the trial court's discretion in denying the defendant's motion for mistrial. At most, the defendant was entitled to an admonition, which was refused when offered.

Jail reference
The next statement of which the defendant complains occurred during the cross-examination of the victim's mother. Defense counsel was questioning the mother about the time periods during which she had lived with the defendant. Unable to recall the approximate dates, she referenced a period when the defendant "went to jail."
Q: And [you] lived together how long?
A: It might've [sic] been about a year and then he went to jail and once he got out, that's when we
Defense counsel moved for mistrial, based upon the witness referring to "other crime" evidence. The trial judge found the answer unprejudicial and noted the remark was not made in bad faith. However, the court offered an admonition, which offer was rejected by the defendant.
We find no error in the trial court's ruling on this matter. The statement was made by a witness during cross-examination, where the defense counsel elicited the response in question. The response by the witness was not a reference to another crime committed or alleged to have been committed by the defendant. The witness did not state why the defendant was in jail, but simply that there was an interruption in their living situation because the defendant was in jail. An admonition under *966 La.C.Cr.P. Art. 771 is not necessary unless the remark constitutes an unambiguous reference to another crime. State v. Walker, 593 So.2d 818 (La.App. 4th Cir. 1992). However, the trial court offered the defendant an admonition, which was declined. We find no manifest abuse of the trial court's discretion in denying the defendant's motion for mistrial. Therefore, the decision will not be disturbed.

Statement by police officer
The final statement occurred during the testimony of Deputy Mike Stone, a prosecution witness. During his direct examination, the deputy was asked to identify the defendant.
Q: Do you know Mr. Scott?
A: Yes, ma'am.
Q: How long have you known him?
A: I've been a deputy 24 years, and probably for the last 12 to 15 years I've known of John Henry.
Defense counsel moved for a mistrial on the basis that the comment inferred that the deputy knew the defendant due to prior criminal activity and argued that it was especially prejudicial given the prior reference to the defendant being in jail by the victim's mother. The trial court denied the motion but offered an admonition, which the defense declined.
In general, a law enforcement officer's unsolicited, unresponsive reference to another crime by the defendant is not the comment of a "court official" under the provisions of La.C.Cr.P. art. 770. State v. Goods, 403 So.2d 1205 (La.1981). Because a law enforcement officer is neither a judge, prosecutor, nor court official, La. C.Cr.P. art. 770 does not apply under these circumstances. State v. White, 593 So.2d 882 (La.App. 2d Cir.1992); State v. Gene, 587 So.2d 18 (La.App. 2d Cir.1991), writ denied, 604 So.2d 993 (La.1992). Absent a showing of a pattern of unresponsive answers or improper intent by the law enforcement officer or prosecutor, such comments would not fall within the purview of mistrial pursuant to La.C.Cr.P. art. 771. State v. Goods, supra.
Deputy Stone made the statement while under direct examination by the district attorney. Although the district attorney did elicit this information from the witness, it appears that the line of questioning was used for identification purposes only and that the officer was simply stating how long he had known the defendant. The mere fact that a police officer has "known" a person for a number of years does not imply that person has committed other crimes. State v. Young, 426 So.2d 370 (La.App. 2d Cir.1983). We find no abuse in the trial court's exercise of its discretion in denying the defendant's motion for a mistrial.
This assignment of error is meritless.

TESTIMONY OF DNA EXPERT
In this assignment of error, the defendant contends that the trial court erred in allowing the state's expert on DNA to testify when the state failed to provide all discoverable documentation pertaining to his report. Additionally, the defendant contends that the trial court erred in not allowing the defense a longer recess to prepare to cross-examine the expert.
A notice of intent to introduce the crime lab report was provided in January 2000, approximately six months prior to trial; attached to the notice was a copy of a lab report dated January 7, 2000. That report concluded that the DNA of the sperm found in the victim's vaginal swab was consistent with that of the defendant and the probability of finding the same DNA in an African American other than the defendant was about one in 20 quadrillion. According *967 to the defendant, once this notice was sent to defense counsel, it was "reasonable" for counsel to assume the report would be submitted in lieu of live testimony. Additionally, the defense complains that it was not provided with any notes, reports and test results from the DNA expert.
The defendant also argues that, although he was given the lab report, he was prejudiced by the state's failure to produce the internal lab records until shortly before the expert testified. The defense asserts that the actions of the trial court were prejudicial due to the lack of time to prepare an effective cross-examination of the expert witness.
Since the "notice of intent" and the lab report were given to the defendant months before the trial, the defendant was aware that DNA evidence was to be admitted against him, be it by the admission of the crime lab report pursuant to La. R.S. 15:499, et seq., or through the testimony of a lab technician. The fact that the state gave timely notice of intent to introduce the report simply allowed the state the option of admitting the evidence contained therein by that method. It did not preclude the prosecutor from choosing to introduce the information contained in the report vis-a-vis the lab technician instead. (Certainly the defendant had the option of subpoenaing the lab technician for cross-examination under La. R.S. 15:501.)
The state properly responded to the defendant's discovery motion when it sent the defendant a copy of the lab results. Had defense counsel chosen to do so, he had ample time and opportunity to go to the crime lab and examine the evidence or internal lab reports. Further, the trial court gave the defense a recess lasting more than an hour to familiarize himself with the materials.[1]
We find no merit to this assignment of error.

PROOF OF PATERNITY
An offender commits the crime of aggravated incest when he engages in certain prohibited sexual acts with a person who is under 18 years of age and "who is known to the offender to be related to the offender as any of the following biological, step, or adoptive relatives: child, grandchild of any degree, brother, sister, half-brother, half-sister, uncle, aunt, nephew or niece." La. R.S. 14:78.1. Consequently, in the instant case, the state had the burden of proving that the defendant knew that the victim was his biological child.
The defendant argues that the trial court erred in admitting into evidence a judgment of paternity naming him the father of the victim in a child support proceeding when the judgment was not yet a final judgment. Specifically, the defendant argues that the introduction of this document was prejudicial in several respects, one being that the burden of proof in such a proceeding was less than the burden of proof in a criminal proceeding. Further, the defendant claims that the judgment was not yet final as it had only been rendered one week prior to the criminal trial and was still subject to being appealed.
When an alleged parent is alive, the burden of proving paternity is by a preponderance of the evidence. La. C.C. art. 209(A); State in the Interest of Robinson v. Sims, 31,333 (La.App.2d Cir.10/28/98), 721 So.2d 90, writ denied, 98-2958 (La.1/8/99), 735 So.2d 640; State in the Interest of Vinson v. Smith, 29,464 *968 (La.App.2d Cir.6/18/97), 697 So.2d 628. Simply stated, it must be shown that paternity by the defendant is more probable than not. State in the Interest of Robinson v. Sims, supra; State in the Interest of Vinson v. Smith, supra. Proof of paternity is a factual question, and a trial court's determination of the issue should not be disturbed absent a finding of manifest error. State in the Interest of Robinson v. Sims, supra; State in the Interest of Vinson v. Smith, supra;
The judgment of paternity was rendered on July 10, 2000, and the defendant was in receipt of that judgment on July 11, 2000. The state complied with its duty of supplementing discovery in a timely manner. Further, since the defendant was living when the paternity testing was performed, the burden of proving paternity was by a preponderance of the evidence. La. C.C. art. 209(A).
The judgment of paternity was admissible pursuant to La. C.E. art. 401 and 402, as it was evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Also, La. C.E. art. 803 states, in relevant part:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
. . .
(19) Reputation concerning personal or family history. Reputation, arising before the controversy, among members of his family by blood, adoption, or marriage, or among his associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of his personal or family history.
. . .
(23) Judgments as to personal, family, or general history, or boundaries. Judgments as proof of matters of personal, family, or general history, or boundaries, essential to the judgment, if the same would be provable by evidence of reputation.
The paternity judgment was relevant and probative, and it fell within an exception to the hearsay rule. The defendant's status as the victim's father was provable by evidence of reputation. The mother of the victim testified that the defendant was the father of three of her five children, one of whom was the victim of the instant offense; that at the time she became pregnant with the victim, she did not have sexual relations with other men; and that she never told the defendant that he was not the victim's father. Also, the victim testified that the defendant is her father, and she called him "Daddy." She also testified that she was accepted by the defendant's family as his daughter and that she called the defendant's mother "Grandma." Finally, the defendant declared that he was the victim's father in an August 1998 acknowledgment of paternity which was admitted into evidence.
Accordingly, we find that the trial judge did not commit manifest error in allowing the judgment of paternity to be introduced as evidence in the case. This assignment of error is without merit.

PREDICATE OFFENSE
As to the habitual offender proceeding, the defendant contends that the trial court erred in adjudicating him a third-felony offender because a predicate offense was premised upon a defective guilty plea. Specifically, he argues that his 1995 guilty plea for simple escape failed to demonstrate that he understood his rights and failed to adequately explain his right to compel attendance of witnesses, *969 the presumption of innocence and the state's requirement to prove guilt beyond a reasonable doubt.
The law requires that a guilty plea be free and voluntary on the part of the defendant. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The jurisprudence does not require that a defendant be informed by a court, prior to the court's acceptance of that guilty plea, that such a plea may be used as a predicate in a future enhancement proceeding. State v. Nuccio, 454 So.2d 93 (La.1984); State v. Longo, 560 So.2d 530 (La.App. 1st Cir.1990); State v. Johnson, 32,910 (La. App.2d Cir.1/26/00), 750 So.2d 398, writ denied, XXXX-XXXX (La.11/3/00), 773 So.2d 140; State v. Guzman, 99-1528 (La.5/16/00), 769 So.2d 1158.
Where the record establishes that an accused was informed of and waived his rights to trial by jury, to confrontation, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. State v. Youngblood, 32,003 (La.App.2d Cir.5/5/99), 740 So.2d 687.
A review of the 1995 guilty plea transcript reveals not only that the defendant was represented by an attorney, but also that all of his Boykin rights were thoroughly explained. The court made advisements and posed questions to him to ensure the plea was knowingly and voluntarily entered. The questions included whether the defendant understood the charges against him and the actions being performed in his case. Also, the defendant was asked if he was satisfied with the work and advice given by his attorney. In response to these questions, he answered, "Yes, sir." Further, a factual statement of the offense was read, as well as the definition of the offense and the penalty range. In response, the defendant indicated that he understood the nature of the offense and the penalty range. He expressed a clear understanding of those rights and never stated that he did not wish to enter a plea. Under these facts, the guilty plea was freely and voluntarily given.
The defendant also argues that, even though the 1995 guilty plea predates the effective date of La.C.Cr.P. art. 556.1, that article's tenets should be applied to the guilty plea. However, a similar argument was rejected by this court in State v. Johnson, 34,902 (La.App.2d Cir.9/26/01), 796 So.2d 201.
The trial court did not err in adjudicating the defendant to be a third-felony offender. Thus, we find that this assignment is without merit.

EXCESSIVE SENTENCE
In his final assignment of error, the defendant asserts that, while statutorily mandated, the life sentence imposed pursuant to his multiple offender adjudication is unconstitutionally excessive.
In support of this argument, the defendant maintains that the predicate offenses used to support his adjudication are relatively minor. He claims that the distribution of marijuana offense involved only a $10 sale. As to the simple escape conviction, he failed to return to jail at the end of the day while serving a sentence through a work-release program. The next day he telephoned the jail and requested to be picked up. As to the present charge, the defendant asserts that the state originally offered him a plea agreement which provided for a sentence of only six years.
We note that as to the distribution of marijuana charge, the defendant was originally charged with two counts of distribution of marijuana. Pursuant to a plea bargain, the state not only dismissed the *970 second count of distribution, but also agreed not to file an arson charge then pending against the defendant. As to the present charge of aggravated incest, the defendant also faces prosecution for two counts of forcible rape of his other teenage daughter. Rather than force the defendant's minor daughters to testify in the presence of their father and a courtroom full of strangers about their sexual assaults, the state asserts that it offered the defendant a "package" deal in exchange for guilty pleas. However, the defendant rejected the offer and the instant charge went to trial.
La. R.S. 15:529A(1) provides, in pertinent part, that:
(b) If the third felony is such that upon a first conviction, the offender would be punishable by imprisonment for any term less than his natural life then:
. . .
(ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.[2]
Since the habitual offender law is constitutional in its entirety, the minimum sentences it imposes upon recidivists are also presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Gay, 34,371 (La.App.2d Cir.4/4/01), 784 So.2d 714. Johnson also held that the burden was on the defendant to rebut the presumption that a mandatory minimum sentence is constitutional. To do so, the defendant must clearly and convincingly show that he is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, 709 So.2d at 676.
Each of the defendant's predicate offenses is defined by statute as a felony, and one offense is a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years. Our review of the record does not demonstrate that the defendant is the "exceptional" type for whom downward departure from the mandatory statutory minimum is required. His criminal history reveals convictions for simple burglary, simple escape, and marijuana distribution. Neither jail incarceration nor leniency in the form of public work release has deterred additionaland more serious criminal activity. In view of these factors, we agree with the trial court's finding that the defendant failed to rebut the presumption of constitutionality of this mandatory minimum sentence. The chosen sentence is tailored to the culpability of this offender and does not shock the sense of justice. This is particularly true in light of the "outrageous and reprehensible act" that the defendant perpetrated upon his own daughter in the instant offense.
This assignment of error lacks merit.

CONCLUSION
We affirm the defendant's conviction for aggravated incest, his adjudication as a *971 third-felony offender, and his sentence of life imprisonment without benefit of parole, probation or suspension of sentence.
AFFIRMED.
NOTES
[1] We further note that, despite his time restraints, defense counsel nonetheless conducted a competent cross-examination of the DNA expert.
[2] This section was rewritten by Acts 2001, No. 403; however, the amendment was not effective until June 15, 2001 and has only "prospective effect." The defendant was sentenced on May 31, 2001.