# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-910


**STATE OF LOUISIANA**

**VERSUS**

**EMILE RICHARD**

**-AKA- EMILE JOSEPH RICHARD**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 109456-F
HONORABLE GARY J. ORTEGO, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**D. KENT SAVOIE**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, D. Kent Savoie, and Candyce G. Perret, Judges.


**AFFIRMED.**

**Edward K. Bauman**
**Louisiana Appellate Project**
**P.O. Box 1641**
**Lake Charles, LA 70602**
**(337) 491-0570**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Emile Richard**

**Trent Brignac**
**District Attorney, 13th JDC**
**P.O. Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**Julhelene E. Jackson**
**Assistant District Attorney, 13th JDC**
**P.O. Drawer 780**
**Ville Platte, LA 70586**
**(337) 363-3438**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **State of Louisiana**

**SAVOIE, Judge.**

This case involves an alleged robbery that took place on February 19, 2017, at a Family Dollar store in Ville Platte, Louisiana.

Defendant, Emile Richard, was originally charged by Bill of Information with armed robbery, a violation of La.R.S. 14:64; theft less than $750.00, a violation of La.R.S. 14:67; and simple battery, a violation of La.R.S. 14:35. On February 19, 2019, the State filed an Amended Bill of Information, which amended the charges against Defendant to a single count of "First Degree Armed Robbery," a violation of La.R.S. 14:64.1. The State then filed a Second Amended Bill of Information, replacing the first Amended Bill of Information, and amending the charges against Defendant to a single count of "First Degree Robbery," a violation of La.R.S. 14:64.1.

Following a trial, a unanimous jury of twelve found Defendant guilty of first degree robbery.[1] The trial court then sentenced Defendant to serve eighteen years at hard labor without benefit of parole, probation, or suspension of sentence.

Defendant is before this court appealing his conviction of first degree robbery. He argues that the evidence was insufficient to support his conviction and that the trial court erred in denying his motion for mistrial. For the following reasons, we affirm.

## ERRORS PATENT

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

---

[1] It is this court's understanding that charges of theft and simple battery charged in the original bill of information have not yet been tried.

**ASSIGNMENT OF ERROR NO. 1:**

In his first assignment of error, Defendant contends the evidence presented at trial was insufficient to prove the elements of first degree robbery, an offense defined in La.R.S. 14:64.1 as "the taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon." Specifically, Defendant contends that the victim's and her co-worker's testimony show that, while they were initially intimidated, they ultimately did not believe Defendant had a weapon, and at some point, it became apparent that Defendant had a stick, rather than a gun. Therefore, according to Defendant, the evidence supports only the responsive verdict of simple robbery.

At trial, Calob Falgoust, an officer with the Ville Platte Police Department at the time of the incident, testified that he received a call at approximately 9:30 p.m. on February 19, 2017, regarding an alleged robbery. He responded to the scene, which was the Family Dollar on Main Street in Ville Platte. Upon his arrival, Officer Falgoust observed two women who were very distressed. They told him that a black male had entered the store as though he was going to shop and put what they believed to be a weapon or a gun to one of the employee's backs. Officer Falgoust indicated that he located a six to eight-inch stick on the floor, and he obtained the relevant video footage from the store. After assessing the situation, he notified Detective Steven Deville.

Detective Steven Deville, also of the Ville Platte Police Department, testified that when he arrived at the Family Dollar, there were two employees present, Shanna Brown and Jana Doucet, as well as two patrolmen. He indicated

2

that Ms. Doucet reported to him that a customer came in to shop and asked where the hair dye was, she took him to the section of the store where the hair dye was, and when they went back to the counter, Defendant grabbed her around the neck, and put an object, which she believed to be a weapon, to her back. Detective Deville also indicated that, according to Ms. Doucet, Defendant had demanded she open the register.

At trial, Detective Deville identified the CD containing the store video of the robbery, which was shown to the jury during his testimony. He also identified a photograph of the stick found at the scene, as well as the stick used in the alleged robbery. Detective Deville then identified photographs of the suspect taken from the store video. There was also a receipt indicating that the total amount of money taken by Defendant was $150.15. According to Detective Deville, two days after the robbery, Defendant was apprehended after being identified in the photographs by confidential informants as well as co-workers who were familiar with him.

On cross-examination, Detective Deville testified that Ms. Doucet, the victim, told him that Defendant grabbed her around the neck; however, he acknowledged that this was not shown in the video of the robbery. He also clarified that Officer Falgoust handed him the stick that he had found upon his arrival at the scene.

One of the store employees at the time of the incident, Ms. Brown, testified that she was a cashier at the Family Dollar on the day of the incident. She indicated that just prior to closing, she was in the back of the store straightening shelves, when she heard a loud disturbing noise from her assistant manager, Ms. Doucet, who was in the front of the store. Ms. Brown testified that she ran to the front of the store where she saw an African American male with his arm wrapped

3

around Ms. Doucet, and that Ms. Doucet's face was so red she thought he might have been choking her. Ms. Brown indicated that, as she approached, Defendant loosened his grip, but he had his arm behind Ms. Doucet's back. According to Ms. Brown, Ms. Doucet could not move, was shaking and scared, could not speak, and could not open the cash register as ordered by Defendant.

Ms. Brown also testified that she saw Defendant with his hand behind Ms. Doucet's back pushing it "into her where she was moving forward." She further indicated that she went around the counter to help Ms. Doucet open the register and she saw that Defendant's hand was behind Ms. Doucet's back "with an object that was gun shaped in a rag." According to Ms. Brown, she and Ms. Doucet fumbled with trying to open the register, but they managed to get it open. Then, when they stepped back, Defendant began taking money totaling $150.00 from the register.

Ms. Brown also testified that the money belonged to Family Dollar, but the register was in the immediate control of Ms. Doucet. She indicated that while Defendant was taking the money, he told her and Ms. Doucet that he knew it was wrong to take the money, but that he was an addict who was having some issues and he needed money. According to Ms. Brown, Defendant put the money back, but then took it again and left, throwing a stick on the counter.

At trial, Ms. Brown was asked to describe her feelings at the time of the robbery. She confirmed that she was afraid, intimidated, and nervous about how the situation was going to turn out. She testified that Ms. Doucet complied with the Defendant's demands because he was threatening her with a gun-shaped object held to her back, making her nervous.

4

The surveillance video from the store was played during Ms. Brown's testimony, and she narrated the events as they happened. She indicated that she saw Defendant holding an object to Ms. Doucet's back and explained that Defendant was telling Ms. Doucet to open the register, but she could not. Ms. Brown indicated that, at this point, she believed Defendant had a weapon and she was scared for her life. When Ms. Brown was asked why she looked calm and collected in the video, she explained that during her six years in the Navy she was taught that in this kind of situation when someone has a gun, you do not "freak out about it" because "that makes them freak out and he might've accidentally shot her." Ms. Brown explained that she was trying to diffuse the situation. She also explained that when Defendant said he did not want to take the money because he knew it was wrong, she no longer believed he had a weapon because a rag initially covering the gun-shaped object had begun to slip and a stick was starting to show. At trial, Ms. Brown identified Defendant as the person who robbed Ms. Doucet at the store.

On cross-examination, Ms. Brown testified that Defendant had a gun shaped object pressed against Ms. Doucet's back, he released Ms. Doucet when she approached, and thereafter never pointed the object at Ms. Doucet again. Ms. Brown also indicated that Defendant never pointed the object toward her.

As noted by Ms. Brown, after Defendant had taken the money from the cash register and then returned it, he asked her and Ms. Brown if he could borrow $20.00; however, each of them told him they did not have any money to loan him. According to Ms. Brown, during this interaction, Defendant shook her hand and thanked her for her service in the military, and Ms. Doucet gently grabbed

Defendant's hand and told him he did not have to do this. Ms. Doucet testified that after Defendant left, she made phone calls while Ms. Brown locked the door.

Ms. Doucet also testified at trial. She was the assistant manager of the Family Dollar at the time of the incident. She stated that at approximately ten minutes before 9:00 p.m., she exited the restroom and saw that a customer was near her register with groceries on the counter. Ms. Doucet identified Defendant as the customer. She indicated that as she was checking out and bagging Defendant's groceries, Defendant asked if she had any hair dye, she showed him where it was, he made his selection, and then set the dye on the counter. She testified that when she began scanning the dye, "suddenly [Defendant] was right behind [her,]" he grabbed her tightly from behind, stuck a "very hard forceful object in her back" she believed to be a gun, and his other arm was around her. She said that Defendant told her to open the register and give him all of the money or he would kill her.

Ms. Doucet also testified that when Defendant grabbed her, she screamed, and Ms. Brown heard her. Ms. Brown called out to Ms. Doucet, and Defendant told Ms. Doucet to be quiet. Ms. Doucet indicated that she was panicked, and could not remember how to open the cash drawer, so she kept looking forward. When Ms. Brown asked her what was wrong, she did not answer. Ms. Brown went around the counter and made her way to the right side of Ms. Doucet. Ms. Doucet testified that the cash register was in her immediate control and after Ms. Brown helped her open the drawer, Defendant took $150.00. According to Ms. Doucet, Defendant wanted her to open the other drawer and the safe, but she told Defendant she had no control over that. Ms. Doucet testified that she was terrified during the incident and she complied with Defendant's demands so he would not kill her. Ms. Doucet stated that, when she was "too afraid to figure out how to

open [her] drawer right [away,]" Defendant "kept telling [her], you stalling me, you stalling me, I don't want to have to hurt you."

Ms. Doucet also described the events as the video was shown to her during her testimony. As Defendant was taking the money, Ms. Doucet tried to "talk [Defendant] down." She indicated that he told her he needed the money because he was on drugs. He then said he could put the money down and walk out the door, something Ms. Doucet encouraged him to do so he could avoid going to jail. She stated she was trying to diffuse the situation. According to Ms. Doucet, during the exchange, Defendant told her he used to work and was in the military, but he could no longer work and make the money he needed. He said he had to take the money. Also according to Ms. Doucet, she did not see the stick until he got to the door and threw it on the countertop by the door. Once Defendant left, Ms. Doucet called the police.

On cross-examination, Ms. Doucet testified that Defendant never told her he had a gun, but he did tell her he was going to kill her. She indicated that once Ms. Brown approached, Defendant let go of her and backed up a bit. He had the object pointed downward. She stated that she did not remember Defendant pointing the object at her again, but she remembers him holding it in his hand. When Defendant was telling Ms. Doucet and Ms. Brown that he needed the money, they were standing with their hands on their hips. Ms. Doucet testified that at this point she still believed he had a gun, but she was not going to panic. Ms. Doucet testified that she was still afraid for her life, but she explained that her body language showed she was calm because during the thirty years she worked as a registered nurse in a psychiatric hospital, she was trained not to panic and not show anxiety. She was trying to get him out of the store. She acknowledged that she

7

shook his hand after he shook Ms. Brown's hand and she told Defendant she was glad he was in the military. At the point they shook hands, Ms. Doucet did not think Defendant would kill them. She did not know the object was not a gun, but she did not think he was going to shoot them. At this point, he had not taken the money out of the register the second time.

When defense counsel pointed out that it appeared that Defendant dropped a stick on the ground and then put it on the counter, Ms. Doucet testified:

> He picked up a quarter and the stick, like I said it's kind like off screen to the right the other countertop, when he was reaching the door that's where he put the stick. Oh that is the stick. He must've picked it back up and went put it on the other counter.

Defense counsel asked that the record reflect the witness was identifying the stick as being on the counter directly in front of Ms. Brown and Ms. Doucet. After that, he exited the store.

A portion of the December 8, 2017 preliminary examination was read into the record. During Defendant's testimony at that hearing, he said he originally intended to enter the store to call his mother, but he believed he was "already tormented and emotionally damaged" before he entered the store. When his request to borrow $20.00 was denied, Defendant, who was holding Ms. Doucet, said he told the ladies he was going to have to ask them to open the register. Defendant was asked if he was holding the stick wrapped in a t-shirt at that point, and he replied, "I believe so."

As noted above, Defendant contends he is guilty of only simple robbery because, although Ms. Doucet and Ms. Brown testified they were intimidated at first, at some point it became apparent Defendant had only a stick.

A similar situation was presented in *State v. Hamilton*, 93-1632, pp. 2-3 (La.App. 4 Cir 11/30/94), 646 So.2d 473, 474, *writ denied*, 94-3162 (La. 5/12/95), 654 So.2d 347, and the court found the evidence was sufficient to support a conviction of first degree robbery:

> The defendant contends the evidence only supports a conviction for simple robbery, not first degree robbery, because before the defendant took the wallet Pennibacker realized the defendant was not armed. This argument has no merit.
>
> First degree robbery is
>
> > [T]he taking of anything of value belonging to another from the person of another, or that is in the immediate control of another, by use of force or intimidation, when the offender leads the victim to reasonably believe he is armed with a dangerous weapon.
>
> LSA-R.S. 14:64.1(A).
>
> The statute requires proof that the offender induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. *State v. Fortune*, 608 So.2d 148, 149 (La.1992).
>
> In *Fortune*, the Supreme Court reversed a conviction for first degree robbery and entered a conviction for simple robbery because the state failed to prove the defendant induced a subjective belief that he was armed with a dangerous weapon. The defendant in *Fortune* told the victim that he had a gun and demanded her jewelry, but the victim refused to comply. There was no testimony that the victim believed the defendant was armed and the victim's friend thought the robbery was a joke.
>
> This case is clearly distinguishable because Pennibacker believed the defendant had a gun, and he had that belief during the course of the robbery.
>
> In *State v. Meyers*, 620 So.2d 1160 (La.1993), the Supreme Court reinstated a conviction for first degree robbery when the defendant took money from an unmanned cash register then used intimidation to escape after the store clerk arrived. The issue was whether the use of force after he took the money from the register satisfied the "force or intimidation" element of robbery. The court noted that the Model Penal Code focuses on whether the force or intimidation is part of the entire act and concluded:

9

that the force or intimidation element of robbery is satisfied by evidence that force or intimidation directly related to the taking occurred in the course of completing the crime.

*Id*. at 1163.

Although *Meyers* involved force or intimidation after the taking, the Supreme Court's reasoning is applicable here. Pennibacker complied with the defendant's demand to approach him based on the belief that the defendant was armed. Pennibacker struck the defendant's hand to knock away the gun and within moments realized the defendant was not armed. A struggle ensued and the defendant took Pennibacker's wallet. Pennibacker's belief that the defendant was armed was directly related to the taking and was integral to completion of the crime. A rational trier of fact could have concluded beyond a reasonable doubt that the taking occurred when the defendant led Pennibacker to reasonably believe he was armed with a dangerous weapon.

Likewise, in *State v. Roper*, 10-1241 (La.App. 1 Cir. 2/11/11) (unpublished opinion), *writ denied*, 11-448 (La. 9/23/11), 69 So.3d 1154, the defendant challenged the sufficiency of the evidence presented to prove his guilt of first degree robbery. The first circuit, finding the state presented sufficient evidence to prove the defendant's guilt beyond a reasonable doubt, stated:

At the trial in this case, the state introduced into evidence a videotape (without audio) of the offense. The videotape showed defendant approach the counter, extend his arm toward the area where Harris was apparently standing, reach over and grab something from the register, and then leave the store. Harris testified that although she did not see a gun, she initially believed that defendant held a weapon based upon defendant's forceful hand gesture. She admitted that her initial belief was dispelled when defendant's hand was exposed as he removed the money from the cash register. Harris's testimony was sufficient to show her subjective belief (although brief in duration) that defendant was armed with a dangerous weapon. *See State v. Gaines*, 633 So.2d at 300-01.

In summary, we find that the evidence presented at the trial in this case sufficiently established that defendant's actions induced a subjective belief in the victim that he was armed with a dangerous weapon and that the victim's belief was objectively reasonable under the circumstances. Considering Harris's testimony that she believed defendant had a weapon, that she feared he would use it, and that

10

defendant took the money from the register in Harris's immediate control, we find there was ample evidence to convict defendant of first degree robbery. Contrary to defendant's assertions, the fact that Harris's belief was subsequently dispelled does not negate the fact that she initially was intimidated and fearful that defendant had a weapon. The evidence showed that Harris complied with defendant's demands and opened the cash register based on the belief that he was armed. It was not until defendant grabbed the money that Harris realized he was not armed. Thus, Harris's belief that defendant was armed was directly related to the taking and was integral to completion of the crime. *See State v. Hamilton*, 93-1632, p. 3 (La.App. 4th Cir.11/30/94), 646 So.2d 473, 474, *writ denied*, 94-3162 (La.5/12/95), 654 So.2d 347. This assignment of error lacks merit.

*Id.* at 2-3.

In the present case, we find that the evidence presented by the State was sufficient to prove the elements of first degree robbery beyond a reasonable doubt. The fact Ms. Doucet later learned Defendant was armed with a stick does not negate the fact that when Defendant told Ms. Doucet to give him the money from the register or he would kill her, she believed that the hard object Defendant held against her back was a gun. Ms. Doucet testified that she was terrified during the incident and that she complied with Defendant's demands so he would not kill her. We find no merit in this assignment of error.

**ASSIGNMENT OF ERROR NO. 2:**

In his second assignment of error, Defendant claims the trial court erred in denying his request for a mistrial. During voir dire, prospective juror, Margaret Deville, stated she knew Defendant from her employment at the GEO-ICE Processing Center, an immigration facility that also houses inmates of the Louisiana Department of Corrections. The trial court denied Defendant's motion for mistrial; however, the trial court did admonish the jury. Since this comment

11

was made by a prospective juror and not the judge, district attorney, or court official, La.Code Crim.P. arts. 775 and 771, rather than art. 770,[2] apply.

Louisiana Code of Criminal Procedure Article 775 states:

> Upon motion of a defendant, a mistrial shall be ordered, and in a jury case the jury dismissed, when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.

Louisiana Code of Criminal Procedure Article 771 provides in pertinent part:

> In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
>
> . . . .
>
> (2) When the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of Article 770.

---

[2]Louisiana Code of Criminal Procedure Article 770 provides in pertinent part:

> Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
>
> . . . .
>
> (2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;
>
> . . . .
>
> An admonition to the jury to disregard the remark or comment shall not be sufficient to prevent a mistrial. If the defendant, however, requests that only an admonition be given, the court shall admonish the jury to disregard the remark or comment but shall not declare a mistrial.

In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.

During voir dire, Ms. Deville stated that she worked for the GEO Corporation for the ICE processing center. She later said, "the defendant I think I, the prisoner, I recognize him." She then indicated that she thought she knew him. Ms. Deville was taken into chambers where, during questioning, she explained that the place she worked was an immigration facility where they "had DOCS" and she recognized Defendant's name as being a prisoner. After she indicated that seeing Defendant in a prison setting would result in her not being impartial, she was released pursuant to a challenge for cause.

After the jury left for a lunch break, the trial court heard defense counsel's motion for a mistrial. Counsel argued that Defendant could not receive a fair trial due to Ms. Deville's prejudicial remark about recognizing Defendant as a prisoner. This, counsel argued, would result in the entire jury pool thinking that Defendant was in custody due to his commission of other crimes. Defense counsel contended that an admonition would not be sufficient because it would "compound the problem" by calling attention to what she said.

The prosecutor pointed out that Ms. Deville's statement that she worked for GEO ICE Processing did not in any way refer to a prison. Ultimately, the trial court denied the motion for mistrial and admonished the prospective jurors pursuant to La.Code Crim.P. art. 771. In admonishing the prospective jurors, the trial court reiterated that a defendant cannot be convicted unless the State proves each and every element of the crime beyond a reasonable doubt and that the jury must apply the law as the instructed. All prospective jurors indicated they could accept these rules.

13

In *State v. Price*, 40,408, pp. 16-22 (La.App. 2 Cir. 12/16/05), 917 So.2d 1201, 1211-14, *writ denied*, 06-156 (La. 6/16/06), 929 So.2d 1284 (footnotes omitted), the second circuit addressed a similar issue:

> In this assignment of error, the defendant contends the trial court committed reversible error when it denied his motion for mistrial and subsequently failed to admonish the jury to disregard statements made by Billy Bagwell, a Ouachita Parish Sheriff's Deputy. During voir dire, Deputy Bagwell was called in the general venire as a prospective juror for this case. When questioned by the prosecutor, Deputy Bagwell stated that he knew the defendant through his job at the Ouachita Parish Correctional Center.

> LSA-C.Cr.P. art. 775 provides for a mistrial if prejudicial conduct inside or outside the courtroom makes it impossible for the defendant to obtain a fair trial or when authorized under LSA-C.Cr.P. art. 770 or LSA-C.Cr.P. art. 771. LSA-C.Cr. P. art. 770(2) provides for a mistrial when a remark is made by the judge, the district attorney, or a court official within the hearing of the jury and the remark refers to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible. When such a remark is made by a witness, however, LSA-C.Cr. P. art. 771 provides a mistrial is not required, if the court is satisfied an admonition to the jury is sufficient to assure the defendant of a fair trial. *State v. Scott*, 34,949 (La.App.2d Cir.1/25/02), 823 So.2d 960, *writ denied*, 2002-1622 (La.5/16/03), 843 So.2d 1122.

> In addition, LSA-C.Cr.P. art. 775 states, in part, that a defendant's motion for mistrial shall be ordered "when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial." The "prejudicial conduct" may include remarks of veniremen during *voir dire*. *State v. Carmouche*, 2001-0405 (La.5/14/02), 872 So.2d 1020; *State v. Sanders*, 93-0001 La.11/30/94), 648 So.2d 1272. However, a mistrial is a drastic remedy to be invoked only when the defendant suffers such substantial prejudice that he is deprived of any reasonable expectation of a fair trial. *Scott, supra*; *State v. Richardson*, 33,272 (La.App.2d Cir.11/1/00), 779 So.2d 771, *writ denied*, 2000-3295 (La.10/26/01), 799 So.2d 1151.

> A trial court need not order a new trial absent a showing that comments made by a prospective juror affected other jurors or prejudiced the defendant. *Carmouche, supra*; *State v. Cushenberry*, 407 So.2d 700 (La.1981); *State v. Hutto*, 349 So.2d 318, 320 (La.1977). The determination of whether actual prejudice has occurred lies within the sound discretion of the trial judge, and this decision will not be overturned on appeal absent an abuse of that

discretion. *Carmouche, supra*; *State v. Wessinger*, 98-1234 (La.5/28/99), 736 So.2d 162 (statutorily superceded in part by LSA-C.Cr.P. art. 905.2(A)). In deciding the correctness of the trial court's *voir dire* rulings, a reviewing court considers the entirety of the voir dire record. *Carmouche, supra*; *State v. Hall*, 616 So.2d 664 (La.1993).

In the instant case, the statement which the defendant challenged and moved for mistrial occurred during jury selection when the prosecutor questioned Mr. Bagwell. The colloquy at issue was as follows:

> [PROSECUTOR]: Can you accept the law?
>
> MR. BAGWELL: Yes ma'am. I don't know if . . . I'm a Deputy Sheriff.
>
> [PROSECUTOR]: All right.
>
> MR. BAGWELL: I work at OCC so I [k]now the defendant.
>
> [DEFENSE COUNSEL]: Your Honor, I would move for a side bar.
>
> [PROSECUTOR]: . . . Mr. Bagwell, I'm going to skip over you. . . .

Thereafter, when motions to discharge certain jurors were being made, the following transpired:

> [DEFENSE COUNSEL]: . . .We would move to discharge Mr. Bagwell who works for OPSO Ouachita Parish Sheriff's Office.
>
> [PROSECUTOR]: Okay. Joint.
>
> [COURT]: Oh, I'm sorry. I could have let him go. Yeah, Mr. Bagwell. He's the one that indicated that and this might be a good time to put your motion on the record. He works for the Sheriff's office apparently at OCC in the correction center and he alluded to the fact or maybe he stated that he had seen the defendant in jail, correct?
>
> [DEFENSE COUNSEL]: Right.
>
> [COURT]: All right. Well, same−

15

[DEFENSE COUNSEL]: We move for a mistrial because we think the other jurors perhaps heard that.

[COURT]: Well, for the record that objection . . . that motion was lodged at the bench.

[DEFENSE COUNSEL]: At the bench.

[COURT]: Yeah, before we even began to fully examine this third panel and while I didn't rule I indicated I probably would deny that motion. Now, he said what, Mr. Kincade, exactly? He just said he recognized or knows the defendant . . . oh, no he disclosed his employment and said he had seen him in jail, right?

[DEFENSE COUNSEL]: I'm not sure−

[COURT]: −I'm not sure what he said.

[DEFENSE COUNSEL]: I'm not sure he had seen him in jail but I think he said he worked at OCC and had seen him or something to that affect.

[COURT]: Okay. With that almost passing reference it's not clear to all of me (sic) that the fellow jurors even took notice of it and I think the instructions to the jurors at the beginning of the case and at the close of the case will be enough to cure that. But he is excused for cause.

[DEFENSE COUNSEL]: Ask to note our objection to the Court's ruling.

[COURT]: All right. That's noted. . . .

We note this court's decision in *State v. Scott, supra*. In *Scott*, during the testimony of Deputy Mike Stone, a witness for the prosecution, the deputy stated that he had known of the defendant for 12 to 15 years. Defense counsel moved for mistrial, contending the deputy's comment inferred that he knew the defendant due to prior criminal activity. This court stated:

Deputy Stone made the statement while under direct examination by the district attorney. Although the district attorney did elicit this information from the witness, it appears that the line of questioning was used for identification purposes only and that the officer was simply stating how long he had known the defendant. The mere fact that a police officer has "known" a person for a number of years does not imply that person has

committed other crimes.  *State v. Young*, 426 So.2d 370 (La.App. 2d Cir.1983).

*Scott*, 823 So.2d at 966.

Here, Deputy Bagwell's unsolicited comment about "knowing" the defendant from "OCC" was made during the third panel of eighteen prospective jurors.  As soon as Deputy Bagwell made the comment, defense counsel requested a side bar, interrupting any further remarks, and the court immediately halted *voir dire*.  When *voir dire* resumed, Deputy Bagwell was not questioned any further.  The record shows that all parties thoroughly examined each prospective juror, and no one was questioned regarding whether they heard Deputy Bagwell's comments.  Defense counsel had the opportunity to examine the remaining members of the venire regarding the comments, and had the opportunity to challenge for cause anyone who may have heard the comments.  Yet, the defense failed to do so.

Moreover, the trial court determined that the instructions to the jurors at the beginning and at the close of the case would be sufficient to cure the prospective juror's "almost passing reference."  Under these circumstances, we find no abuse of the trial court's discretion in denying the defendant's motion for mistrial.

Likewise, in the present case, shortly after Ms. Deville's comment was made, she was removed from the courtroom and questioned outside the presence of the jury venire.  The parties examined each of the prospective jurors and did not question them concerning Ms. Deville's comment. Further, the trial court admonished the jurors as discussed above.  Under these circumstances, we conclude that the trial court did not abuse its discretion in denying Defendant's motion for mistrial.  This assignment of error lacks merit.

## DECREE

For the reasons set forth above, Defendant's conviction of first degree robbery is affirmed.

**AFFIRMED.**

17